## SALMON *against* BENNETT.

*Hartford,*
June, 1816.

THIS was an action of ejectment for three pieces of land in *Weston.* The general issue was pleaded, and closed to the court by agreement of the parties. The cause was heard at *Fairfield, December* term 1815, by *Edmond, Smith* and *Hosmer,* Js.

It was admitted, by both parties, that *Stephen Sherwood* was formerly the owner of the demanded premises. The plaintiff claimed title thereto, by virtue of the levy of an execution in his favour against *Stephen Sherwood* in 1814. The defendant claimed title by virtue of a deed from *Stephen Sherwood* to his son *Salmon Sherwood,* dated the 17th of *December* 1798; and a deed from *Salmon Sherwood* to the defendant, dated the 6th of *March,* 1802. The deed from *Stephen Sherwood* to his son was given for the consideration of natural affection only; and this fact was well known to the defendant when he made the purchase and took the conveyance from *Salmon Sherwood.* The plaintiff contended, that his demand against *Stephen Sherwood,* on which said execution was afterwards obtained, arose long before and subsisted at the execution of the first mentioned deed; and in proof of this, the plaintiff introduced the record of a suit in chancery before the superior court, in *December* 1809, brought by him against *Stephen Sherwood,* complaining of false and fraudulent representations, in the sale of *Virginia* lands in *December* 1794, respecting their situation and value, together with certain defects in the title, and praying for a reimbursement of the purchase money with interest, which was accordingly decreed.(a) The defendant proved, that *Ste-*

Where a conveyance was made to a child in consideration of natural affection, without any fraudulent intent, at a time when the grantor was free from embarrassment, the gift constituting but a small part of his estate, and being a reasonable provision for the child; it was held, that such conveyance was valid against a creditor of the grantor, whose claim existed when the conveyance was made.

*Qu.* Whether a *bona fide* purchaser, for a valuable consideration, may derive a valid title from a against the voluntary grantee, in whose hands the conveyance is, by concession, void, as creditors of the voluntary grantor?

> Conn.
> 1   525
> 62   451
> 1   525
> 71   85

(a) The petition in chancery stated the same facts as were alleged in the action at law for damages between the same parties, reported 2 *Day's Ca.* 128. and concluded with praying the court " to set aside and annul the contract and sale therein mentioned, and to order and decree that said *Sherwood* should pay back to said *Salmon* the money paid by said *Salmon* to said *Sherwood.*" At the term of the superior court held at *Fairfield* in *December* 1809, a decree was passed, annulling and setting aside said contract and sale, and ordering, that " if said *Salmon,* his heirs or assigns, should execute a good and authentic deed of release, therein and thereby reconveying to said *Sherwood,* his heirs and assigns, all such right, title and interest as he the said

*Hartford,*
*June, 1816.*

Salmon
*v.*
Bennett.

*phen Sherwood,* when he executed the deed of gift to his son, was not indebted to any person, except to the plaintiff, in the manner stated; and that the land thus conveyed did not contain more than one eighth part of his real estate. But it was admitted, that long before the levy of said execution, he had conveyed, by several deeds, all his real estate, and was, at that time, entirely destitute of property. Upon these facts the plaintiff contended, that the deed from *Stephen Sherwood* to *Salmon Sherwood* was fraudulent as against the plaintiff; and even if there was no actual fraud, yet being voluntary, it was void. The defendant, on the other hand, insisted that the deed was not made to defraud creditors, and was not void. The court reserved the case for the consideration and advice of the nine Judges.

*Daggett* and *N. Smith,* for the plaintiff, contended, 1. That a deed of gift is void against any creditor who is one at the time of the conveyance. In *Westminster-Hall* this proposition would not admit of a doubt. The case of *Doe* d. *Otley* v. *Manning,* 9 *East* 59. goes further, and decides that a conveyance made in consideration of natural affection only, the grantor not being then indebted, and there being no fraud in the transaction, is void against a *subsequent* purchaser for a valuable consideration. In the principal case, the grantor was indebted at the time of the conveyance. He then had the plaintiff's money in his hands, which he was liable to refund. The plaintiff's claim existed as soon as he bought and paid for *Virginia* lands, under false and fraudulent representations, and with a defective title. The decree in chancery afterwards enforced that claim, but did not create it. The plaintiff was an *equitable creditor* before the decree. Can then a father, being indebted in equity, make a gift

*Salmon* acquired in and to said lands in said petition described, by virtue of the deed executed to him the said *Salmon,* and deliver the same to the said *Sherwood,* or lodge the same with the clerk of the superior court for the county of *Fairfield,* by the 11th day of *January* 1811; then he the said *Sherwood* should pay to him the said *Salmon,* in eight months from the delivery of said deed to him the said *Sherwood,* or the clerk of said superior court, the sum of 3570 dollars 25 cents, being the amount of the purchase money paid by the said *Salmon* to the said *Sherwood* after deducting the sum of 450 dollars, with the lawful interest thereof from the 1st of *October* 1795 to the time said payment should be made, together with costs, &c. and in default of such payment, the said *Sherwood* should forfeit and pay to the said *Salmon* the sum of 10,000 dollars."

of land to his son, in consideration of natural affection only, which shall be valid against such equitable creditor? There is the same reason why a conveyance should be void against a claim in equity as at law. If the conveyance in question be not void, all voluntary conveyances, without actual fraud, must be valid. In *Parker* v. *Proctor*, 9 *Mass. Rep.* 390. the conveyance was held good; but there the creditor became such after the conveyance, and with notice of it.

2. That the defendant having purchased the premises of the voluntary grantee, knowing that the conveyance to him was voluntary, had no better title than he had. This point is established by the case of *Preston* v. *Crofut*, decided in this Court, *November* term, 1811.(b) That case, indeed, went

*Hartford,*
June, 1816.

Salmon
*v.*
Bennett.

### PRESTON *against* CROFUT.

THIS was an action of ejectment for a piece of land in *Newtown*, at a place called *Palestine.* The cause was tried at *Danbury, September* term, 1811.

On the trial, the plaintiff claimed title to the land in question, by virtue of a deed from the administrators of *Richard Nichols*, deceased. The defendant derived his title, through several conveyances, from the same person. The facts were these. *Richard Nichols* was originally the undisputed owner of the land. In *November* 1798, *Philo Norton* recovered a judgment against him and two others; and on the 4th of *January* 1800, said land was set off in due form on an execution issued on that judgment. On the 22d of *February* 1800, *Norton* gave a deed of said land to *John Peck ;* on the 9th of *March* 1801, *Peck* gave a deed of it to *Oliver Tousey ;* and a few days afterwards, *Tousey* gave a deed of it to the defendant, who had ever since been in possession. *Nichols* died, administration was regularly taken out, and his estate represented insolvent; and on the 24th of *August* 1809, said land was sold to the plaintiff, by order of the court of probate, for the payment of *Nichols*' debts. The plaintiff claimed, that the judgment recovered in *November* 1798, was fraudulent. The defendant denied that it was fraudulent; and contended, that the deeds from *Norton* to *Peck*, from *Peck* to *Tousey*, and from *Tousey* to the defendant, were *bona fide*, and for valuable considerations. He also contended, that if said judgment was fraudulent, it was not known to be such to the subsequent purchasers, nor had they any notice whatever of the fraud. Upon this state of the case, the court charged the jury, that if they should find said judgment to have been a fraudulent judgment, no subsequent *bona fide* purchaser, for a valuable consideration, without notice of the fraud, could hold the demanded premises against the creditors of *Nichols.*

The jury found a verdict for the plaintiff; and the defendant moved for a new trial on the ground of a misdirection. The question of law arising on this motion was reserved for the consideration and advice of the nine Judges.

*Gould,* in support of the motion. The only question is, whether the direction to the jury was right in point of law. The defendant claims, that it was not: and the proposition, to be supported by him, is, that a conveyance, by a frau-

A *bona fide* purchaser, for a valuable consideration, from the grantee of a fraudulent conveyance, acquires no title against the creditors of the fraudulent grantor.

much further; for it was there determined, that a *bona fide* purchaser, under a fraudulent grantee, *without notice of the fraud,* could not hold against the creditors of the fraudulent grantor. In the present case, the conveyance was construc-

dulent grantee, or fraudulent judgment creditor, to a *bona fide* purchaser, is valid against the creditors of the prior fraudulent grantor, or judgment debtor.

The statute provides, that a conveyance, made to defeat creditors, shall, as to them, and their representatives and assigns, be " utterly *void ;*" upon which last words much stress was laid, by the plaintiff's counsel, at the trial. But with regard to the mere *construction* of this clause, there seems to be no room for any diversity of opinion. The import of it, (which is perfectly clear upon the face of the act) is, merely that the " *fraudulent* and *deceitful* conveyance," (*i. e.* the conveyance from the fraudulent *debtor, to his fraudulent grantee,*) shall, as against the creditors of the former, be void. But the provision extends no further. It is limited to those creditors, their representatives, and assigns, on the one hand, and the *debtor's* fraudulent grantee on the other. The conveyance is void, then, so far as the question depends upon the construction of the statute, as between *those* parties only. The statute, most manifestly, does not contemplate a sale by the fraudulent *grantee,* to an innocent purchaser: for upon no plausible construction, can the clause be extended to the latter. The question, then, is, whether a conveyance, between the parties, last supposed, is void by *consequence ? i. e.* whether, *because* a fraudulent conveyance is void, as between the grantor's creditors and the grantee, *any* subsequent conveyance, which the latter may make of the same subject, is, *of course,* and *necessarily,* so ? A question depending not upon any supposeable construction of the statute, but upon the general principles and analogies of law.

Upon this question the objection arises, that he, who, as against his grantor's creditors, has no title, can convey none, as against them, to another. For how, it is asked, can a title be derived from one, who has none ?

1. Titles are certainly thus acquired, in very many cases, and upon a principle plainly applicable to the present, *viz.* that a fair purchaser, relying upon *authentic* and *regular* evidence of title, ought to be protected against private claims, of which he had no *notice,* actual or constructive. " For it is expedient," says *Blackstone,* " that the buyer, by taking *proper precautions,* may, at all events, be secure of his purchase ; otherwise, all commerce between man and man must soon be at an end." 2 *Com.* 449.

Upon this principle it is, that a sale in market overt to a *bona fide* purchaser, will confer a good title against the true owner, though the vendor had none. If the trustee of an estate conveys it to one having no notice of the trust, the latter will hold, even in equity, to the exclusion of the *cestuy que trust ;* though, as between the trustee and the *cestuy que trust,* the equitable title is in the latter. A sale of goods by a bailee, having, with the consent of the bailor, the *apparent* ownership, will, in many cases, bind the latter ; though, as against him, the bailee had no title. And the whole doctrine of *tacking* incumbrances is built upon the same principle. For the first incumbrancer has no priority to the second, except for the amount of his own debt : And yet by a conveyance of his title to a third mortgagee, who had no *notice* of the intermediate incumbrance, the latter acquires a priority for *his* debt also. All these cases are stronger than the present : For, in each of them, the seller transfers the *interest*

tively fraudulent, because it was *voluntary;* of which the defendant had full knowledge. This was at least sufficient to put him upon his guard; which is all the notice that chancery requires. With such notice, he must stand on the same ground as the grantee in the voluntary deed.

of another, without his consent. Whereas, in this case, the plaintiff, upon his own principles, had no kind of interest in the land, or claim to it, till after the title, under which the defendant holds, was acquired.

This last consideration, so far as rules of equity may be allowed to operate, (and upon a question, to be determined on original principles, those rules are surely to be regarded) presents the case in another important aspect. The *bona fide* assignee of a fraudulent purchaser has, plainly, a *higher equity* than the creditors of the first grantor. They, as creditors, have no *lien,* specific or general, upon the land. They rely upon the personal credit of the debtor, and voluntarily leave it in his power to transfer to another the highest, and the only ordinary, evidence of title, known to the law. The assignee, who, relying upon such evidence, advances his money, not upon the personal credit of the debtor or fraudulent grantee, but as the consideration of a conveyance of the land itself, has the higher equity, on the same principle, on which a mortgagee's equity is higher than that of a bond-creditor of the mortgagor. The case of *George* v. *Milbank,* 9 *Ves.* jun. 190. is very strong to this purpose. *Sugd. Law of Vend.* &c. 437. and cases there cited. Indeed, in this view of the case, it falls within the broad principle of the common law, that when one of two innocent persons must suffer, by the act of a third, he, by whose act or neglect, the third person has been enabled to occasion the loss, must sustain it. 2 *Term Rep.* 70.

2. The argument, that because the fraudulent grantee acquires no title as against creditors, his *bona fide* assignee can acquire none, leads necessarily to a conclusion, which, the plaintiff's counsel will concede, is not law, *viz.* that a grant to an honest purchaser, by the original debtor *himself,* would be void, as against his creditors. This conclusion is inevitable, if the proposition is maintainable, that a fraudulent purchaser has the *same* right in the subject, and the *same* power over it, as his grantor had before the conveyance. And that this proposition is correct, is demonstrable upon principle, and by authority; and if it is so, it not only answers the objection, now immediately under discussion, but, in its necessary results, obviates every other that has yet been raised against the defendant's title.

The sole object of the statute is to protect creditors against a *fraudulent* sale by their debtor. And though, as against *them,* such a sale is void; yet, as between the *parties,* it is confessedly valid. The fraudulent purchaser, then, acquires the same title to all the interest, which the deed imports to convey, as the grantor had before the conveyance—subject, indeed, to the claims of the grantor's creditors, *as it was* in his hands, but *not otherwise.* The grantee, of course, has the *same* power over the subject, as the grantor had before the conveyance, and *no more.* It follows, then, that as a *fraudulent* conveyance by the original debtor would be void as to his creditors; *such* a conveyance by his fraudulent grantee, must be so. But, as a *fraudulent* sale is the only thing, against which the statute protects the creditors of the first grantor; a sale by him, to a *bona fide* purchaser, would have been valid, their claims notwith-

*Hartford,*
*June, 1816.*

Salmon
*v.*
Bennett.

*Sherman* and *T. S. Williams,* contra. 1. The plaintiff claims as a *creditor* of *Stephen Sherwood,* and not as a *purchaser.* The whole class of decisions upon the 27 *Eliz. c.* 4. which relates to *purchasers,* may, therefore, be laid out of

standing. Of course, a sale by the fraudulent *grantee,* to *such* a purchaser, is good against them.

Precisely conformable to this view of the question have been the decisions upon the statute 27 *Eliz. c.* 4. against conveyances in fraud of *purchasers.* Thus, in *Prodgers* v. *Langham,* 1 *Sid.* 133. it was resolved, that " if one makes a fraudulent feoffment, and the feoffee makes a feoffment to another for valuable consideration, and afterwards the first feoffor also, for valuable consideration, makes a second feoffment ; the feoffee of the feoffee shall hold against the second feoffment of the first feoffor." This precise doctrine prevailed also in *Smartle* v. *Williams,* 3 *Lev.* 387. in *Andrew Newport's* case, *Ca. Temp. Holt,* 477. and in *Porter* v. *Clinton, Comb.* 222. In the last case, Lord *Holt* says, " if a conveyance be made by fraud, and afterwards the land is conveyed over, upon valuable consideration, *bona fide ;* the fraud is *purged."* The same rule governed the case of *Doe* v. *Martyr,* 1 *New Rep.* 332.; and had been before recognized and approved by Lord *Kenyon,* in *Parr* v. *Eliason,* 1 *East,* 95.

In all these cases, the governing principle has been, that a fraudulent grantee has the *same* rights and power over the subject, as his grantor originally had ; and that, *therefore,* a conveyance, by the former, to an honest purchaser, is valid. The language of Lord *Holt* in *Newport's* case, is very strong and explicit on this point. " The first mortgage," he observes, " is good between the *parties,* and being so, when the first mortgagee assigns for valuable consideration, this is *all one,* as if the *first mortgage* had been upon a valuable consideration : for now the second mortgagee stands in *his place."* Now, unless it can be shewn that a fraudulent purchaser has higher rights and powers under the statute 27, than under the 13 *Eliz.* (and this, one would suppose, would hardly be attempted) these authorities are decisive.

It was urged, at the trial, that if the defendant's doctrine is to prevail, creditors may be defeated by *collusion :* because nothing more is necessary, than for a debtor to make a covinous sale, and for the fraudulent grantee afterwards to convey over to a *bona fide* purchaser, and the fraud is effected. It cannot have escaped observation, that this topic of argument would be equally applicable to cases arising under the statute 27 *Eliz. ;* and yet, in all the cases, before cited, arising under that statute, this objection has been disregarded. It was pressed, by counsel, in the case of *Doe* v. *Martyr ;* but without success. And, surely, there can be no soundness in an argument, founded upon the supposed danger of mischief from *collusion,* when, the same mischief may be as easily, and more easily, effected, *without* it. The debtor himself may, confessedly, defraud his creditors, by conveying to a purchaser, who has no knowledge of his fraudulent purpose. And is it more difficult for him to do this, directly, than to convey to one, who is privy to the fraud, and procure him to do the same thing ? The objection would prove, if any thing, that a *bona fide* purchaser from the debtor *himself,* ought not to hold against the latter's creditors, because they might thus be defrauded

The answer given to the cases under the statute 27 *Eliz.* that they are

the case. The strong case of *Doe* d. *Otley* v. *Manning*, so much relied on by the plaintiff's counsel, is one of these. The question then is, whether a voluntary conveyance, is, under all circumstances, void, within the 13 *Eliz.* c. 5., or inapplicable, *because* the claim of a subsequent purchaser from the original grantor, under that statute, does not accrue, till *after* the fraudulent conveyance, cannot bear a moment's examination. For, in the first place, the objection would be equally strong, against subsequent *creditors*, under the statute 13 *Eliz.* : and yet, it is admitted, that in cases of actual fraud, at least, the rights of prior and subsequent creditors, under the latter statute, are precisely the same. But further : the claim of a prior *creditor* to the *land*, or *subject* conveyed, (and this is the only claim of his that can be regarded,) is always subsequent to that of the fraudulent purchaser ; otherwise the question of fraud could never arise. The *debt's* being prior, is nothing to the purpose. Besides : so far as there is any discrimination between the rights of creditors, under the statute 13 *Eliz.* and those of subsequent purchasers, under the 27th, the distinction is uniformly in favour of the latter. They have always been more favoured than general creditors, under the 13th ; because, not having trusted, like the latter, to the personal credit of the grantor, but having advanced money, only upon a *conveyance* of the specific property in dispute ; they have, according to all principle and analogy, a higher equity—precisely as a mortgagee has a higher equity to claim the land mortgaged, than the mortgagor's general creditors ; and precisely, (I may add,) as the present defendant has a more equitable claim than the plaintiff.

If it is still to be insisted, that the cases cited upon the statute 27 *Eliz.* are not applicable to the case of *creditors* ; the objection can be repelled by authority. For the doctrine, for which I am contending, was applied directly to the statute 13 *Eliz.* by Lord *Eldon*, in the case of *George* v. *Milbank*, 9 *Ves.* jun. 190. In that case, though the property in question was holden to be *assets*, as between the creditors of the appointor, and the *fraudulent appointee* ; yet the claim of a *bona fide* purchaser from the latter was supported against the *creditors*. Here, then, at any rate, is a judicial decision in point.

The plaintiff's counsel, however, contend, that none of the cases under the statute 27 or 13 *Eliz.* can apply : because each of those acts contains a *proviso*, (which is omitted in ours,) in favour of *bona fide* purchasers : and that all the cases cited fall within one of those *provisos.*

1. It is very manifest that the *proviso* in each of the *English* statutes, was inserted, as is frequently done, *ex abundanti cautela ;* and that the construction and effect of both the acts are the same, as they would have been, if the *provisos* had been omitted. The object of inserting them was to protect the *original* or *first* conveyance, if made to one, who was not privy to any fraudulent design in the grantor. Thus, in the statute 13 *Eliz.* the *proviso* was introduced, to guard against a possible construction, to the prejudice of an honest purchaser from a *fraudulent* debtor. The case of a sale, by a fraudulent *grantee* of the debtor, is not provided for by the statute ; but left, to be governed by general principles. A conveyance, by the debtor *himself*, is the only one contemplated by the act. It seems clear, that no other is in contemplation, in the enacting clause ; and the *proviso* manifestly relates only to conveyances between the *same* parties. Lord *Holt's* argument in *Newport's* case, is direct and full to this point.

*Hartford,*
June, 1816.

Salmon
*v.*
Bennett.

our statute against fraudulent conveyances(a) derived from it? There is no case to be found in support of the affirmative of this question. In *Sagitary* v. *Hyde,* 2 *Vern.* 44. it is said by the court, " that every voluntary conveyance is not

(a) *Tit.* 76. *s.* 1.

He says, indeed, that the *second* mortgagee, (meaning the assignee of the first,) is within the *proviso ;* but taking this expression in the connexion, in which it stands, it establishes the precise position, which I am endeavouring to support. His words are these : " for now the second mortgagee stands in *his,*" (the first mortgagee's) " *place,*" (*i. e.* in the same predicament as if he had derived his title, *immediately,* from the mortgagor ;) " and, THEREFORE, is in the *proviso.*" The amount of Lord *Holt's* argument, then, is precisely this : the assignee of the fraudulent mortgagee is within the *proviso ;* but he is within it by *consequence* only. For, as the *mortgagee,* if he had purchased *bona fide,* would have been within it ; *therefore,* his assignee, having *so* purchased, must be within it. In other words : as the *proviso* is intended for the benefit of the *original* purchaser, if the conveyance to him is *bona fide ;* his *bona fide* assignee, having the same rights, as if he had been the original purchaser, shall also be protected.

2. But if the *English* cases have been governed by the *provisos* in the statutes 13 and 27 *Eliz. ;* they are still not the less applicable here. For as those statutes, as well as our own, are in *affirmance of the common law* ; (*Cowp.* 434.) the rule of decision must, of course, be the same in our courts, as in *Westminster-Hall.* And if it should be objected, as it was at the trial, that they are declaratory only to the purpose of *invalidating* the covinous conveyance, and not so as to the *extent* and *effect* of its invalidity ; or, in other words, that the *enacting* clauses only, and not the *English provisos,* are in affirmance of the common law ; it may safely be answered, that such a distinction is not merely arbitrary, but directly opposed to plain and acknowledged principles. For it necessarily presupposes, that a sale by a debtor, with a secret fraudulent intent, though made to a *bona fide* purchaser, (who is confessedly within the *proviso* of the statute 13 *Eliz.,*) would, at *common* law, be void as to creditors : a proposition, to which the plaintiff's counsel themselves will not assent. But, (what is decisive,) in *Dy.* 12. where a conveyance by the fraudulent grantee to a *bona fide* purchaser was holden to be valid, the determination could not have been founded upon the *proviso* of the statute ; for the statute itself was *posterior* to the decision.

If authorities and principles, like those, already submitted for the defendant, can require to be *vindicated ;* it may be added, that the argument *ab inconvenienti,* is strong in his favour. The mischievous tendency of the doctrine he opposes, is too obvious to require much illustration. When it is considered, that no length of possession by a fraudulent purchaser, confers a title ; (*Beach* v. *Catlin,* 4 *Day* 284.) that not only conveyances, *actually* covinous, but such as are merely voluntary, are void within the statute ; (*Doe* v. *Manning,* 9 *East* 59.) and void, as well against subsequent, as prior, creditors ; (3 *Co.* 82 *b.* Com. Dig. *Covin,* B. 2.) it is manifest, that upon the plaintiff's principles, there is hardly a conceivable case, in which a purchaser can be secure. The statute is thus converted into an act to enable creditors to *defraud* honest purchasers. Indeed,

therefore fraudulent ; but a voluntary conveyance, if there was a reasonable cause for the making of it, may be good and valid against a creditor." The circumstance that the conveyance was a *voluntary* one, affords a presumption of

it may reasonably be doubted, whether any rule, ever before contended for in *any* case, in our courts of justice, would be as pernicious in its results, as that on which the plaintiff's claim is founded.

*Daggett* and *R. M. Sherman,* contra. It is admitted, on the part of the plaintiff, that the conveyance declared by the statute to be "utterly void," is that, and that only, which is "made to avoid any debt or duty of others ;" and that no *bona fide* conveyance, made by the fraudulent grantee, or by any assignee of his, is within the provisions of the statute. It is, however, contended, that no construction is admissible, which may, in any event, give validity to the *same* conveyance which the statute has declared to be void. So long as no inference is made, from the validity of the subsequent conveyances, inconsistent with that entire nullity of the first, expressed by the words "utterly void," the statute itself stands unimpugned. But it is contended, that the subsequent conveyances, because they have no inhibited ingredient, but are *bona fide,* and not within the letter or spirit of the statute, become endowed with a retroactive efficacy, and give force to the conveyance originally void. So that the question is not whether the statute operates on subsequent *bona fide* conveyances ; for it is admitted, that it has no effect on them. Every remote grantee, in tracing back his chain of title, will find each part sound, until he arrives at a fraudulent deed. Even that is good against all but the creditor. And if, as to him, the grantee can maintain his claim without it, the statute is not in his way. But if he sets that up against the creditor, the latter may reply, in the language of the statute, that *quoad* him, it is "*utterly* void."

The counsel for the defendant, however, contends, that the fraudulent grantee has all the power of his grantor over the property ; and, it being admitted, as it certainly is, that the first grantor could have made a valid title against creditors, *therefore,* it is said, the grantee may do the same.

This inference is unquestionably correct, if the premises are sound ; but the position, that, under our statute, the grantee has all the power over the property which the grantor had, is unsupported by reason or authority. This, however, being a cardinal proposition, on which the argument for the defendant chiefly turns, it deserves examination.

To support it, the three following positions are advanced :

First, That the protection of the creditor, against a *fraudulent* sale *by the debtor,* is the object of the statute.

Secondly, That the fraudulent sale is good as between the grantor and grantee. Now, these two positions are admitted. The *third* is claimed as an inference from them, and is not admitted, because not a just inference.

Thirdly, That the purchaser acquires the *same title* which the fraudulent grantor had, liable to the claims of creditors precisely *as it was* in the hands of the grantor. This inference either assumes the point in question, or does not flow from the premises. The very question is, whether the fraudulent grantee acquires the *same title* which his grantor had, as against creditors. If, as against creditors, the conveyance is *void,* in the strict sense of that word, then

*Hartford,*
June, 1816.

Salmon
*v.*
Bennett.

fraud. So does the circumstance that the grantor was *in-debted* at the time. But in either case, the presumption may be repelled. *Newland on Contr.* 384. to 388. *Russel v. Hammond,* 1 *Atk.* 15. *Walker* v. *Burrows,* 1 *Atk.* 93. *Ste-*

he does not acquire the same title. If it be not void in any sense but what will admit of such an acquisition, then he may acquire the same title. The argument, therefore, amounts to nothing, since it merely assumes the controverted import of the word " void."

But it will appear manifest, on careful attention, that the title of the grantor, as against creditors, previous to the grant, is wholly different from that of the grantee subsequent to the grant. Before the grant, the title of the grantor is good against creditors, and when the property is taken by them, it is in affirmance of that same title. Suppose the debtor's title is by a deed from *A.*; the creditor, after levy, will admit the validity of that title, and will himself claim under *A.* But the creditor denies the title of the fraudulent grantee, and claims not *under* it, but against it. So there is this very material difference between the title of the grantor and that of the grantee, *viz.* that the levy of the creditor is in *affirmance* of the one, and in *avoidance* of the other. Now, if there be no conveyance *by* the fraudulent grantee, but the property remains in his hands, till taken by the creditor; it is conceded, that the title of the grantor is *good*, and *transferred* to the creditor by the levy; and the title of the grantee *bad*, and *avoided* by the levy. How, then, can it be contended, that a conveyance by the grantee, which, on the face of it, does not purport to fortify the title under which he claims, can possibly have that effect? If done, in any form, with an express view to validate his fraudulent title; the intent, to say the least, would not aid it; for *quoad* the creditor, it would be matter *inter alios.*

Much erroneous reasoning on this subject has resulted from the *partial* inefficacy of the fraudulent deed. Had the statute declared it " utterly void" as to *all* the world, so that the grantee would have had no title even as against the grantor, or any one else, it would not, it is presumed, have been contended, that the grantee could have made a title to another. The nullity of a deed given contrary to the statute of 1727, (*Tit.* 97. *c.* 17.) by one disseised, would probably be admitted to be so entire, as to give no title to the most cautious subsequent purchaser without notice, notwithstanding, as a *general* position, it is " *expedient* that the buyer, by taking proper precautions, may, at all events, be secure of his purchase." It cannot be perceived why the strong, unqualified, and unequivocal language of the statute, should not make the deed in question void as " utterly" *quoad* the plaintiff, as it would be, if the same language included every one else. If, indeed, the argument for the defendant derives any weight from the fact, that the fraudulent grantee did obtain a good title to some purposes; let it be applied to the fraudulent deed itself. It cannot yield more support to any other part of the defendant's title than to that. *Quod ab initio non valet, in tractu temporis non convalescit.* Where the fraudulent deed is left, by that circumstance, at the time of its creation, it will be found at every subsequent period of time.

The fraudulent grantee, therefore, has not, as against the creditor, the *same title* which his grantor had, and might have conveyed to a *bona fide* purchaser.

It is moreover contended, that one having *apparently* a legal title, may make a valid conveyance to a purchaser without notice. It is not, however, understood

*phen* v. *Olive,* 2 *Bro. Ch. Ca.* 90. *Lush* v. *Wilkinson,* 5 *Ves. jun.* 384. 387. *Parker* v. *Proctor,* 9 *Mass. Rep.* 390. *Bennett* v. *Bedford Bank,* 11 *Mass. Rep.* 421. *Verplank* v. *Sterry,* 12 *Johns. Rep.* 558.

to be claimed, that this may be done generally. The cases put, are all manifest exceptions to the general rule, and, we believe, are founded on particular grounds of exception inapplicable to the case in debate. Possession is *prima facie* evidence of title to personal estate; but *mere* possession will not enable a stranger to give a title, except in market overt. That exception is well known to be grounded on rules of policy applicable to that kind of sale only; and the very exception shews the general rule to be otherwise, according to the familiar maxim *exceptio probat regulam.* However *bona fide,* such a sale, in the ordinary course of dealing, would be void. The title of the really legal proprietor would remain unimpaired. Where one purchases of a trustee, without notice of the trust, he acquires, in fact, a good *legal* title; but the *cestui que trust* has no title except in equity. Now, when application is made to equity to *take away* a legal title from the lawful holder, the court will not interfere, if the equity of the parties be equal; but leave them as they stand at law. The special ground of denying relief in that case is inapplicable here; for we claim by a *legal* title only. Suppose, (as the defendant here is a *bona fide* purchaser, and in possession) that there were a formal defect in the title of *Richard Nichols,* the debtor, in consequence of which, admitting our title to be in other respects good, we could not maintain ejectment. The defendant, having discovered that, and also our claim, obtains a conveyance from *Nichols'* grantor, in order to protect his illegal, though equitable, possession. We then apply to equity, against the defendant and the grantor of *Nichols,* praying that the formal defect may be remedied, that we may be enabled to eject the defendant at law. The court do not interfere, because the defendant's equity is as good as ours. Could it be inferred from that *only,* that we must have failed at law, even if the defect in the debtor's title had not existed? Certainly not, and for this obvious reason, that equity may refuse its aid to the very claim, which, if clothed with legal form, would prevail in a court of law. It is on this principle, admitted in equity, but never acknowledged in a court of law, that the whole doctrine of tacking incumbrances is founded. On a similar principle, the case of *George* v. *Milbank* must have been decided for the *bona fide* purchaser, had there been no *proviso* to the *English* statute, and however fully our construction of the enacting clause might have been acknowledged. But the case of *Hartop* v. *Hoar,* with others of the same class, prove strongly, that the rights of a *bona fide* purchaser, where the vendor, even with the owner's consent, had the apparent evidence of property, must yield to those of the *legal* proprietor. No equitable right, however superior, can defeat the legal title in a court of law.

But it is said, that we extend the statute beyond its letter and intent. "The protection of the creditor against a *fraudulent* sale *by the debtor* is its object;" not against a *bona fide* sale by the *debtor's grantee.* Our argument demands neither more nor less than this. Not *more*; for it admits the intrinsic validity of every conveyance subsequent to the debtor's. Not *less*; for it insists, that, for the protection of the creditor, the debtor's alienation is utterly void, notwithstanding any subsequent *bona fide* conveyances of the property.

2. The plaintiff had no *debt* against *Stephen Sherwood* at the time of the voluntary conveyance. He had at most only a claim for damages arising from a *tort*. This did not constitute him a *creditor*. *Lewkner v. Freeman, Prec. Chan.* 105.

The *English* authorities can add no weight to the argument of the defendant. The *proviso* in the 13 *Eliz.* wholly excludes the question. It is this : " That this act, or any thing therein contained, shall not extend to any estate or interest in lands, &c. which estate or interest is, or shall be, upon good consideration and *bona fide*, lawfully conveyed or assured, to any person or persons, or bodies politic or corporate, not having, at the time of such conveyance or assurance to them made, any manner of notice or knowledge of such covin, fraud or collusion as is aforesaid." If we be asked, whether the conveyance to the defendant be on *good consideration and bona fide*, without any manner of notice, &c. of the fraud, &c., we answer in the affirmative. If further asked, whether such an estate or interest would be affected by the *English* statute ; we answer, that the *proviso* in the *English* statute *expressly* says it would not. That *proviso*, then, if annexed to our statute, would preclude all controversy on the question. To say that the decisions in *England*, under either of their statutes, would have been the same without the provisos, is to assume the point in question. It also ascribes the decisions to presumed grounds, when they could not but be as they are, on grounds which are known and imperative. It is a maxim in physics, the reason of which is applicable here, that to assign more causes for a given phenomenon than are necessary, is unphilosophical. It cannot be inferred, that the *proviso* has no efficacy, and was inserted merely *ex abundanti cautela*, from its embracing a case which would have stood clearly on the same ground without it. We admit, that a sale on good consideration, made with intent to defraud creditors, to one who is ignorant of the intent, is valid under *our* statute. Such a case, however, is embraced in the general words of the *proviso* in the 13 *Eliz.*—although, for that *only*, the proviso would have been unnecessary. As that case has the general nature of those for which we think the proviso expressly made, and must necessarily be embraced in the same *general* expressions, it would have been very inconvenient, as well as very useless, to have used any phraseology *merely* to shew, that the proviso was inserted for subsequent purchasers, and not for the immediate vendee of the debtor. It is, therefore, very evident, that if subsequent purchasers alone were intended to be protected by the *proviso*, it would have required no different form of words from that which is adopted. The reason of providing for a subsequent purchaser, must have resulted from the very construction of the enacting clause for which we contend ; and the same construction would render any provision for the immediate vendee of the debtor unnecessary. In the latter case, the vendee takes from one who has a title to convey ; in the former, the title of the subsequent *bona fide* purchaser, being intercepted by the enacting clause, a proviso is *necessary* to give efficacy to the deed.

But it has been contended, that provision for subsequent purchasers, so far from being, as we contend, the principal, if not the only object of the legislature, was not within their contemplation at all. But the very language of the proviso supports our construction. The words " *notice of the collusion*," are inapplicable to the original parties, and must have been intended for subsequent purchasers exclusively. The word " *collusion*," *ex vi termini*, applies solely to

*Fox* v. *Hills*, 1 *Conn. Rep.* 295. 299. 300. 303. *et seq.* But in fact he had no *legal* claim whatever, as was decided in *Sherwood* v. *Salmon*, 2 *Day's Ca.* 128. If his case was such as would entitle him to relief in chancery, it was only

a case where *both* parties are involved in the guilt. To such a case, most clearly, the proviso does not apply, for no sale is protected, except where one party, *viz.* the purchaser, is innocent. The only sale, then, protected by those expressions, must be that of a *subsequent* purchaser, who has *no notice* of the *collusion* between the debtor and his fraudulent vendee.

It is very obvious, from the language of our statute, and the great respect with which our ancestors constantly consulted the *English* law, that the 13 *Eliz.* was its model. The variations from that original must, of course, all have been designed. Whether the exposure of purchasers to the loss of property fairly bought of a fraudulent vendee, was a greater evil, than forever to deprive the creditor of his claim after a *bona fide* sale, was a question proper for the consideration of the legislature, and one, we presume, which did not escape their attention. Whatever ingenious objections may be made to the *policy* of the statute, we trust that experience, the touchstone of political expediency, has tested and proved its wisdom. The legislature have thought fit to make the acquisition of a valid title under a fraudulent conveyance *impossible ;* and, of course, it is rarely attempted. They have wisely deemed it better to demolish, at once, the labyrinths of fraud, than to leave the unfortunate creditor to explore them. The vendee being a *bona fide,* and not a *fraudulent,* purchaser, his case will not fall within the principles of *Beach* v *Catlin,* applicable only to a *fraudulent trustee ;* and will not, consequently, be aggravated, by exclusion from the common privileges of the statute of limitations.

BALDWIN, J. The question in this case is, whether under the statute entitled " an act against fraudulent conveyances" a *bona fide* purchaser, from one claiming under a fraudulent judgment and execution, acquires title against the creditors of the fraudulent grantor.

As it can make no difference in principle, whether the title of the *bona fide* purchaser is through a fraudulent judgment, or a fraudulent grant, I shall, as more simple, consider this case as resting on a fraudulent grant.

It is agreed, that the law is the same, whether the fraudulent grant was prior or subsequent to the debt of the creditor. It is also admitted, that the title of the defendant's grantor was opposed to the statute and fraudulent, but that the defendant was a *bona fide* purchaser for a valuable consideration ; and it does not appear that he had knowledge of the fraud.

The question, then, depends wholly on the operation of the statute.

It is obviously the intention of this statute to prevent fraud, and to protect creditors. It ought, therefore, to have a liberal construction, in suppression of the mischief, and in extending the relief.

By the first section of the act, all fraudulent conveyances or judgments designed to defeat the recovery of debts, are, as to creditors, utterly void. By the second, heavy penalties are inflicted on the parties to such fraudulent conveyances, &c. who claim them to be fair, or aliene, with an exception of the purchaser who bought *bona fide,* on good consideration, and without design of fraud.

on certain conditions. He had no debt, even after the decree, until he re-conveyed the land; and it was optional with him to re-convey or not. He might have sold the land for more than he gave for it; and it might cost him more to get it

By the express terms of the statute, then, all such fraudulent conveyances, are, as to creditors, utterly void, unless made valid, or saved from its operation, by the terms of the exception. It is important, therefore, to consider the extent and effect of that.

To determine the extent of the exception, it is necessary to determine, first, the extent of the act. This, in terms, embraces all fraudulent conveyances; and while all will admit that conveyances made designedly, by both the contracting parties, with a view to defeat creditors, are fraudulent; it is contended that a conveyance made with that design by the grantor, to a grantee ignorant of the fraud intended, cannot be fraudulent, because, it is said, that every fraudulent contract necessarily requires the fraudulent assent of the contracting parties. This distinction, as applicable to this question, is merely plausible. Every conveyance designed by the grantor only, to defeat the creditor of his due, is, as to the creditor, a fraudulent conveyance, and as such is included in the act, and declared void; but the ignorance and fair conduct of the honest purchaser may, under certain restrictions, afford good ground for an exception in his favour. For this purpose the exception was made, and seems, at the first view, only to intimate, that though by the body of the act, a conveyance to a *bona fide* purchaser, on good consideration, if made by the grantor, with a view to defeat creditors, shall, as to them, be void; yet if such purchaser aliene, or claim his purchase to be fair, he, by the exception, is saved from the penalties. I presume, however, that the legislature meant to extend the exception to the conveyance, as well as to the penalties; and that it would be too limited a construction to confine its operation to the last clause; for the statute, though now divided into two paragraphs, with the exception annexed to the last, was originally penned, and in the early editions printed, without a division. And it appears to me evident, from the nature of the exception and its object, that it extends equally to the whole act. A debtor may intend, by the sale of his estate and secreting the avails, to defeat his creditors; yet if the purchaser contract *bona fide*, on good consideration, before any attachment of the estate, and without knowledge or fraudulent design of defeating creditors, it seems unreasonable, to make such purchaser responsible for the secret intentions of the grantor, and the more so, as by the consideration received, he is furnished with other funds to meet his creditors. Yet as such a sale is evidently within the letter of the act, the exception, with great propriety, saves such conveyance from its operation, as well as the purchaser from the penalties, but will not save a conveyance, on a consideration paid to the full value of the estate, if the purchaser had knowledge of the fraud, and designed by the purchase to defeat creditors.

It is further contended, that the exception will extend to the honest purchaser from the fraudulent grantee. If such were the intention of the legislature, it is to be lamented, that the fair import of the expressions used does not convey it. As it was obviously their intention to protect the rights of creditors, it is not to be presumed, that a provision would be inserted which would defeat the object intended, by saving rights of no higher equity, and growing out of the very fraud intended to be suppressed. Such a presumption cannot

*Hartford,*
June, 1816.

Salmon
*v.*
Bennett.

back than the decree was worth. He might not elect to become a creditor at all.

3. The defendant being a purchaser for a valuable consideration, with notice only of the simple fact that his grantor held under a voluntary conveyance, is to be protected in his

be permitted to aid a construction in the least doubtful. No person, on reading this statute, would conceive that the exception extended to a subsequent purchaser. On the contrary, the purchaser mentioned in it, is evidently a party to the original contract, and, as such, *prima facie* exposed to the penalties. But a fair purchaser from a fraudulent grantee, cannot, in any sense, be considered a party to such contract, unless he became a subsequent grantee with knowledge and in aid of the fraud, in which case he would not be saved by the exception.

Again, the statute, in express terms, makes utterly void, as to creditors, all fraudulent conveyances designed by the parties to defeat creditors of a recovery of their debts. The obvious inference from this, is, that as nothing passes, as to creditors, out of the grantor, by such conveyance, no subsequent transfer can by possibility be good as against them. There is no basis on which it can rest. The chain of title is interrupted. The exception merely cannot, therefore, give validity to a conveyance, where no title existed in the grantor. This consideration shews, that the exception is confined solely to the first transfer, and can never extend to a subsequent sale. In whatever view, therefore, we consider the exception, it will afford no relief to this defendant. But

It is contended, that a defective title may be cured by a regular and authentic chain of conveyance. I admit, that this may often be done, when, by the rules of the common law, the title is defective; but whenever a statute makes void an instrument, or a contract, they are void past redemption. Thus, a note or a bill of exchange made void by the statute of usury, though negotiable in their nature, and fairly transferred for valuable consideration, will always remain void.

It seems to me there would be no doubt on this question, were it not for the decisions in *England* on their statute of 27 *Eliz. c.* 4. and an attempt to apply the principle of those decisions to the case before us. Our statute is derived from 13 *Eliz. c.* 5. and is very similar in its provisions. It is singular that under the operation of that statute, for more than two centuries, no decision on this question is to be found in the *English* reports. The question remains unsettled in this state also, although our statute was passed more than a century ago.

It is contended, that the principle guiding the numerous decisions on similar questions arising under the 27 *Eliz.* will lead to the same result on that of the 13th, and on our statute. There is, however, an apparent difference, not only in the object of the two statutes, but in the extent of their provisions. The object of the 13 *Eliz.* and of our statute, is solely the protection of the *creditor.* To effect this, all fraudulent conveyances to defeat the recovery of his debts, are, as to him, utterly void, and to all other purposes are good. Nothing is left in the grantor, unless it is the power to convey to a creditor. He can never make any other second conveyance, even to a *bona fide* purchaser. The fraudulent purchaser receives the estate subject to the lien of the creditor; and having no title as against him, of course has no power to do any act that

title. *Andrew Newport's* case, *Skin.* 423. S. C. by the name of *Smartle* v. *Williams,* 3 *Lev.* 387. S. C. by the name of *Smart* v. *Williams, Comb.* 247. *Prodgers* v. *Langham,* 1 *Sid.* 133. *Porter* v. *Clinton, Comb.* 222. *Kirk* v.

will defeat the lien. This statute provision as to any fraudulent attempt to defeat a recovery, is as operative in favour of the creditor, as an attachment of the land, which cannot be affected by any subsequent *bona fide* transfers.

The proviso to the 13 *Eliz.* is, " that the act shall not extend to lands conveyed on good consideration and *bona fide,* to a purchaser without notice or knowledge of the fraud."

The exception in our statute is, " except the purchaser make it appear, that the contract was made *bona fide,* and on good consideration, before seizure by the creditor, and that it was without design of fraud to defeat creditors."

Both the proviso and the exception are, from their nature, limited to the first conveyance. That being fraudulent, will of course be void, unless saved by these conditions, *viz.* that it was on good consideration, *bona fide,* and to a purchaser ignorant of the fraud intended. A failure in either of these conditions would still leave the conveyance void.

The object of the 27 *Eliz.* is to protect the *bona fide purchaser.* It therefore makes void, in favour of such purchaser, all prior fraudulent grants, intended to defeat his title. The grantor, therefore, has still the power to alienate again to a *bona fide* purchaser, notwithstanding his fraudulent grant, a power which the fraudulent grantor under the 13 *Eliz.* has not. But the power is not expressly or exclusively reserved to the grantor. As the object is to defeat the fraud intended, and to protect the fair purchaser, the provision is general, that the fraudulent conveyance shall be void, as to its operation, against a fair purchaser. If then the fraudulent grantee conveys to a *bona fide* purchaser, the object is obtained by giving that validity to the fraudulent conveyance, which, by the statute, it always has, when no fraud is done to an honest purchaser. A fraudulent conveyance is good between the parties, until it becomes injurious to a *bona fide* purchaser. In this sense, it may indeed be said, *whatever the fraudulent grantor may do, his grantee may also do.* If there were any doubt with respect to this construction of the act, the proviso, which is peculiar, and different essentially in its effects from that of the 13th, removes it. By this proviso, " the act shall not extend to, or be construed to make void, any conveyance made upon good consideration and *bona fide.*" The grantee of such a conveyance may have full knowledge of the fraud intended ; he may so purchase from either of the fraudulent parties ; still his conveyance is within the proviso, and not void. This proviso cannot be confined to the first conveyance ; for it is impossible that should be fraudulent as to purchasers, and yet be made on good consideration, and *bona fide.* The proviso, then, can only apply to subsequent conveyances.

The obvious meaning of this proviso, viewed in connexion with the object of the act, is, that the fraud intended shall never defeat an honest purchase. The act, therefore, shall not extend to make void any such conveyance, though *prima facie* resting on a fraudulent basis.

Either of the parties to the fraudulent conveyance, may, therefore, under that statute, make a valid *bona fide* conveyance. If made by both, the first in time will of course be preferred.

*Clark, Prec. Chan.* 275. *Doe d. Bothel v. Martyr,* 1 *New Rep.* 332. *George v. Milbanke,* 9 *Ves.* jun. 190. *Jackson d. Bartlett v. Henry,* 10 *Johns. Rep.* 185. 197. *Fletcher v. Peck,* 6 *Cranch* 87. 133. 135. *Hamilton & al.* v. *Greenwood & al.* 1 *Bay* 171.

*Hartford,* June, 1816.

Salmon *v.* Bennett.

While I admit, that such has long been the course of decisions under the 27 *Eliz.* I can by no means admit, that they are applicable to the case before us. To make the cases arising under the two statutes parallel, so that a common principle shall apply, the second conveyance under the 13 *Eliz.* or our statute, ought to be to a *creditor ;* for as the fraudulent grant, as to him, was void, a conveyance to him as a creditor, in consideration of his debt, or as a security for it, would probably be considered valid even from a fraudulent grantor ; and if so, on the analogy claimed, the fraudulent grantee might have made a similar valid conveyance to such creditor. But this is not such a conveyance. Indeed, the principle claimed, would, if adopted, wholly defeat the operation of our statute, as a protection to creditors, and make it like the 27 *Eliz.* a protection to *bona fide* purchasers, to the exclusion of creditors, the sole object for which it was enacted.

On the whole, I am of opinion that an original conveyance, confessedly fraudulent, being utterly void as to creditors, can afford no basis for valid conveyances to defeat their lien, even by a *bona fide* purchaser from either of the parties. Of course, the defendant in this case has no title against the plaintiff.

The charge was, therefore, correct, and I do not advise a new trial.

In this opinion MITCHELL, Ch. J. and SWIFT, TRUMBULL, and BRAINARD, Js. concurred.

SMITH, J. The only question involved in the decision of this case is, whether a *bona fide* purchaser for a valuable consideration, from a fraudulent grantee, can hold the land against the creditors of the first grantor.

I have formed an opinion that the purchaser under such circumstances ought to be protected, notwithstanding the claims of creditors.

In examining the question, I will, in the first place, consider it as a new one, and attempt to support my opinion from principles of the common law, and the construction of our statute against fraudulent conveyances.

I shall then, in the second place, attempt to shew that those principles have been fully adopted by the courts in *Great-Britain.*

The plaintiff's counsel rely on the first paragraph of the statute against fraudulent conveyances, which is in the following words : " That all fraudulent and deceitful conveyances of lands, tenements, hereditaments, goods or chattels, and all such bonds, suits, judgments, executions or contracts, made to avoid any debt or duty of others, shall, (as against the party or parties only whose debt or duty is so endeavoured to be avoided, their heirs, executors or assigns) be utterly void, any pretence or feigned consideration notwithstanding." This statute, it is insisted, making the conveyance void as to creditors, is to have the same effect, whenever a question arises regarding their interest, as though the statute made the conveyance void to every purpose whatever ; and hence the grantee, having no title as against them, could convey none, which should be valid in opposition to their claims. This argument

Swift, Ch. J. Fraudulent and voluntary conveyances are void as to creditors; but in the case of a voluntary conveyance, a distinction is made between the children of the grantor and strangers. Mere indebtedness at the time takes for its basis that part of the statute which renders the conveyance void as to creditors, regardless of that which virtually declares it good between the parties, as though we were not bound to observe the whole law. But we are as much bound to give one part of the statute its full force and effect as we are the other; and it appears to be as much the object of the legislature to validate the conveyance between the parties, as it was to nullify it as to creditors. I would then give both parts of the statute an equal operation, and consider myself as being no more at liberty to reject one than the other. Whenever a fraudulent conveyance is made, therefore, and any question arises relative to the rights and powers of the various parties in interest, we are bound to consider it as being both void in regard to creditors, and valid as between the parties. And the rights and powers secured to the grantee, are as sacred as those secured to creditors.

What then is the amount of the statute in rendering the conveyance void as to creditors? It is to remove the conveyance out of their way, and place them in the same situation as though it had not been made. What is to be the effect of that part of the statute rendering the conveyance valid between the parties? I answer, it gives the grantee all the rights of the grantor, subject to such rights as the creditors had before the conveyance was made, and such as they would continue to have, had the conveyance not been made. The creditors have lost none of their rights by the fraudulent conveyance; neither have they acquired any new ones. Their condition is the same regarding the land as before. So, on the other hand, the fraudulent grantee steps into the shoes of the grantor, and takes all his rights, subject to the same rights of creditors as his were, and no other.

I would then inquire what are the relative rights and powers of creditors and their debtor, who is attempting to convey his estate out of their reach? The answer is perfectly obvious, that the creditors may levy on the land at any time, if they please, and thereby secure an interest in it. But their debtor has an equal right, at any time, to convey the land to a *bona fide* purchaser, and thereby secure a good and complete title in opposition to all their claims. I would also remark, that priority in exercising these rights is the only criterion to determine which shall prevail.

Precisely the same thing is true, after a fraudulent conveyance. The creditors have the same right to levy as they had before; and the grantee has the same right to convey as the grantor had. Neither can make a fraudulent conveyance to affect creditors; both can make a *bona fide* one.

In this way, perfect harmony is preserved; we give every part of the statute its full effect; the rights of creditors are secured, without sacrificing those of the grantee. In this way, we render the conveyance void as to creditors, by continuing all their former rights unimpaired by the conveyance, and, at the same time, give to the grantee all the rights of the grantor.

This view of the subject must be correct, unless it can be shewn, either that creditors are placed in a more favoured situation in consequence of a fraudulent conveyance than they are without it; or, that the grantee has not all the

will not, in all cases, render a voluntary conveyance void as
to creditors, where it is a provision for a child in considera-
tion of love and affection; for if all gifts by way of settle-
ment to children, by men in affluent and prosperous circum-

*Hartford,*
June, 1816.

Salmon
*v.*
Bennett.

rights of the grantor subject to their claims. Neither of these positions will
be seriously contended for.

I am also strongly inclined to the opionion, that unless the grantee under a
fraudulent conveyance can transmit the title to a *bona fide* purchaser, there is
no person whatever who can; and the estate becomes completely locked up in
his hands. The creditors certainly cannot; for they have strictly no interest
in the land, until they have proceeded agreeably to law in making an applica-
tion of it to discharge their debts. Can the fraudulent grantor, who has made
a conveyance to defeat the claims of his creditors, afterwards convey to a *bona
fide* purchaser? I think he cannot. The statute 27 *Eliz.* declares the
conveyance void as to any *bona fide* purchaser, whether prior or subsequent
to the fraudulent conveyance. And this is the case, whether the parties had
it in view to defeat the particular conveyance in question or not. Indeed, the
words of that statute are general, applying to all persons who have purchased,
or shall purchase, for money, or other good consideration. It is therefore
evident, that this statute gives the fraudulent grantor power to vest a title in a
*bona fide* purchaser. But the statute of the 13 *Eliz.* was never supposed to
have any such effect. Indeed, if it had, I see not but the 27 *Eliz.* was
altogether unnecessary. Our statute seems to be nearly a copy of the statute
of 13 *Eliz.* with some variation of expression, which consists principally in
this, that the words " *debt and duty*" are introduced into our statute to supply
the place of the words " *actions, suits, debts, accounts, damages, penalties,
forfeitures, heriots, mortuaries, and reliefs,*" which are used in 13 *Eliz.* If our
statute can be construed to affect *bona fide* purchasers at all, it must be from
the word " *duty* " which is introduced into it; and whether this can be
construed to comprehend any of them or not, it is unnecessary for me to deter-
mine, because if it should be admitted that it can, yet I think, that the legisla-
ture have altogether omitted the general provision of 27 *Eliz.* rendering the
conveyance void as to all *bona fide* conveyances whatever, and have confined it
to such conveyance, or in the language of the statute (applying it to a case of
this kind,) *such duty as is so endeavoured to be avoided* by the fraudulent convey-
ance. And this is as far as is necessary to attain all the ends of justice in this
state, where all deeds must be recorded at length in the town where the land
lies; to which records, purchasers may, at all times, resort, with the utmost
facility, and see the exact state of titles. The only possible danger of
defrauding a purchaser by a covinous, deceitful conveyance, arises from the
possibility, either that a fraudulent conveyance may be made with a view to
immediately sell the land for a valuable consideration, and then get the fraudu-
lent deed first recorded, and thereby defeat the *bona fide* conveyance; or knowing
that the land has already been sold *bona fide*, but that the purchaser neglects
to record his deed, a fraudulent deed is made with a view of getting it first
recorded. And both these evils are sufficiently guarded against, by rendering
the fraudulent conveyance void as to those purchasers whose conveyance was
endeavoured to be avoided, and in confining it to those who were in view at
the time of the fraudulent sale. I feel, however, very doubtful whether the

stances, were to be rendered void upon a reverse of fortune, it would involve children in the ruin of their parents, and in many cases might produce a greater evil than that intended to be remedied. Nor will all such conveyances be valid ;

legislature intended to legislate on the subject of *bona fide* purchasers ; and while a disposition to attain all the purposes of justice, which seem necessary, would incline me to this opinion, it seems difficult, on the other hand, to give the word " *duty*" so extensive a meaning. But if it is admitted, that they intended to affect this subject ; yet, I think, neither the ends of justice require, nor the words of the statute permit, us, to extend it to *bona fide* purchasers generally. And such a total departure from the provisions of 27 *Eliz.* as we find in our statute, sufficiently shows, that the legislature did not intend to introduce the provisions of that statute in their fullest extent.

If, then, I admit, that the fraudulent grantor has power to create a valid title in the purchaser, who was the particular object of the fraud ; and if I admit, that he may also convey to creditors, as to whom the conveyance is void ; yet I may conclude, that he has no general power to convey ; and if the grantee has it not, no person has, and the property is locked up in his hands. And will it be seriously claimed, that creditors may stand by, and neither take the property themselves, nor suffer it to be sold ? Shall they be suffered to neglect taking it, while the property remains in the fraudulent grantee's hands, and then defeat the claim of an innocent purchaser for valuable consideration ? I feel no hesitation in saying, that if the grantor has not the power to sell to a *bona fide* purchaser, the grantee must have it. The law will not place property in such a situation that no person has the power to transfer it.

But if the grantor has the power to convey to a *bona fide* purchaser, it by no means follows, that the grantee has not the same power as fully as the grantor. Both may have it, and the first *bona fide* conveyance for value may stand, let which will make it. This is clearly the case in *England* under the statute 27 *Eliz.*, as I shall show more fully hereafter. Indeed, the great and manifest object of the legislature is to destroy the titles of covinous and fraudulent grantees, not *bona fide* ones, for valuable consideration ; and for this distinction there is the strongest reason. Creditors, indeed, ought not to be interrupted in collecting their debts, by the mere deceitful contrivances of others. But purchasers who have paid a full consideration, relying on regular and authentic evidence of title, stand on higher ground than creditors. The former have certainly equal equity with the latter ; and having obtained a regular conveyance, together with possession of the land, this gives them a decided preference. So far as it respects the debtor himself, it seems to be admitted, that the innocent grantee for valuable consideration is to be protected, notwithstanding the claims of creditors, even though the object of the grantor should be to defraud his creditors ; but it is denied as relative to a conveyance from a fraudulent grantee to a *bona fide* purchaser. I am, however, unable to see any difference in their situation. Both grantees equally rely on regular and authentic evidence of title ; both equally pay a full consideration ; both are equally innocent of any fraud, or even neglect ; and both are supposed to have obtained actual possession of the land.

I am aware, that it was said in argument, that where the debtor sold the land himself, his funds would be increased by the consideration received :

for then it would be in the power of parents to provide for their children at the expense of their creditors. Nor is it necessary that an actual or express intent to defraud creditors should be proved ; for this would be impracticable in

whereas by a sale from the fraudulent grantee, they would not. This argument might have some weight, if the sole object of the statute was to secure the interest of creditors, without any regard to innocent purchasers ; but I think it perfectly clear, as I have already shewn, that the latter stand on the first and highest ground.

But again ; where the fraudulent grantee sells the land, it must be supposed to be done in pursuance of an understanding with the grantor, and for his benefit. Besides, where the debtor himself sells for the purpose of defrauding his creditors, but conceals his object from the purchaser, the consideration received will of course be put out of the reach of his creditors.

It is not, then, the consideration received by the grantor, which affords protection and security to the *bona fide* grantee ; but it is his own favoured situation. I consider it of the utmost importance to have the titles to our lands as stable and certain as possible. Possession in this case does not carry with it the same evidence of ownership as it does in the case of mere personal chattels ; and as the property is more durable and permanent, so questions may arise regarding the title to it, at a much more distant period of time, than is ordinarily the case in regard to personal property. Few men in society, comparatively, could sell land, if they could afford no better security of title to their purchaser than what would be derived from their own responsibility ; and few would dare to purchase, if their security was merely the warranty of the grantor. Such a state of things would reduce the titles of land to a level with mere choses in action, without giving the grantee power to secure himself by action, as a creditor may in ordinary cases ; for the grantor may not be rendered liable upon his warranty until a distant period, when he may have parted with all the property he possessed at the time of the conveyance, and yet the grantee may have lost the land. Besides, it frequently happens that people, without either personal responsibility, or friends to become responsible for them, are under the greatest necessity of selling their lands. Our ancestors appear to have been fully impressed with these ideas, and have accordingly made ample provision, that whether a man obtains a title under a deed of conveyance, or the levy of an execution, or by descent ; the evidences of his title shall appear on some public record in the neighbourhood of the land.

I would not say, that no evidence of title is to be admitted, except what appears of record ; because there may be other evidence which affords more certainty than even this ; particularly, a fifteen years quiet and uninterrupted possession, is, in my opinion, more to be relied on than any record evidence whatever. But I mean to say, that I would admit with great caution any principles which appear to me calculated to unsettle and render precarious, the titles to our lands. Of this nature, in an eminent degree, are the principles I oppose ; and when taken in connexion with other principles recently settled by this Court, they appear to me to go very far towards destroying that security which every purchaser ought to have, who pays a valuable consideration for lands.

many instances, where the conveyance ought not be established. It may be collected from the circumstances of the case. But in all cases where such intent can be shewn, the conveyance would be void, whether the grantor was indebted or not.

Let us see, for a moment, what may be the situation of a purchaser, if these principles are adopted. It is now considered as settled law, that any debt contracted after a fraudulent conveyance stands on the same ground with those contracted before. And this is the case, though the creditor knows of the fraudulent conveyance ; because he is supposed to know also that it is void in point of law, and contracts with that view. It was also decided by this Court in the case of *Beach* v. *Catlin,* 4 *Day's Ca.* 284. and must therefore now be considered as law, that no length of possession in the grantee under a fraudulent conveyance, will secure to him a title against the creditors of the grantor. It will then come to this, if a *bona fide* grantee is not to be protected, that a man about to purchase lands may examine the records, and find the title apparently regular. He may examine further, and find that the possession has followed the record title for thirty or forty years. He may, out of abundant caution, knowing that his grantor is not responsible, and therefore that he cannot rely on his warranty, still wish to search further. He proceeds to enquire into the debts which his grantor owes, and finds that the consideration he pays, discharges them all. He also finds, on enquiry, that all the grantors through whose hands the estate has at any time passed, are entirely free from debt. And after all this, he may pay the full value of the land, and yet his title may be defeated by a new debt, contracted with some one of the intermediate grantors, who may have made a fraudulent conveyance, perhaps forty years before, but whose debts then existing were all immediately discharged. This would be too monstrous to be admitted for a moment ; yet it is the natural consequence of the principles contended for in this case, when taken in connexion with other principles which have been settled by this Court.

I think I may safely conclude, that on principle only, although I should derive no support from adjudged cases in the courts of *Great-Britain,* the *bona fide* grantee must be protected. And let it be remembered, that there has not been a pretence, even in argument, of deriving support to the principles I oppose from *English* authorities. It seems to be admitted, that those principles are entirely novel, both in that country and this. And I must be allowed to say, that they appear to my mind, as unfounded and dangerous to society, as they are novel.

I will now proceed to show, secondly, as was proposed, that my opinion is fully supported by adjudged cases in *England.*

I shall begin with citing *Andrew Newport's* case, reported in *Skin. Rep.* 423. This case has been a leading one, though not the first in point of time. The question in this case arose upon the assignment of a mortgage, which appeared to be fraudulent in its creation, but the assignment was made on good consideration and *bona fide ;* and it was objected, that this would not purge the fraud and make it good against the defendant, who was a purchaser *bona fide,* and for a valuable consideration. But *Holt,* Ch. J. said, " The first mortgage was good between the parties, and being so, when the first mortgagee assigns for a valuable consideration, this is all one as if the first mortgage had been

In order to enable parents to make a suitable provision for their children, and to prevent them from defrauding creditors, these principles have been adopted, which appear to be founded in good policy. Where there is no actual fraudulent

*Hartford,*
June, 1816.

Salmon
*v.*
Bennett.

upon valuable consideration ; for now the second mortgagee stands in his place, and therefore is within the proviso of 27 *Eliz.*"

It ought here to be remarked, that the statute of 27 *Eliz.* makes fraudulent conveyances void as to *bona fide* purchasers, as fully as the 13 *Eliz.*, or the statute of this state, does as to creditors. And yet we do not find Chief Justice *Holt* seizing hold of that part of the statute, rejecting every other, which serves to explain or qualify it. We do not find him pressing the rights of those in whose favour the fraudulent conveyance was declared void, regardless of the situation of the fraudulent grantee. But in determining the rights and powers of the *fraudulent grantee* to convey, he rather attends to *his* situation, and first declares the conveyance *good between the parties ;* and on this basis founds his whole argument ; for *this being so,* he says, *when the first mortgagee assigns for valuable consideration, this is all one as if the first mortgage had been upon valuable consideration.* But if Lord *Holt* had adopted the principles contended for by the counsel for the plaintiff in this case, he would have said, that the purchaser for valuable consideration under the fraudulent grantor is within the very letter and spirit of the statute, and that the fraudulent mortgage was as to him a mere nullity ; and as the mortgagee had no title as to him, he could convey none which would affect his rights.

The doctrine I contend for is laid down substantially in *Comb.* 222. 249. where Lord *Holt* places the grantee under a fraudulent conveyance in the same situation with the grantor, by remarking, that *what Muddiford doth for valuable consideration, Kendal doth.*

In *Prodgers* v. *Langham,* 1 *Sid.* 133. the principle is laid down generally, that if a fraudulent grantee conveys to a *bona fide* purchaser for a valuable consideration, it is good, and is purged of the fraud by matter *ex post facto.*

The same principles are fully adopted in the case of *Doe* on the demise of *Bothell* v. *Martyr,* 1 *New Rep.* 332. In that case, it seems, the grantor having made a voluntary settlement, attempted to defeat it, by fraudulently pretending to convey for valuable consideration, when no value was received, and the fraudulent grantee having made a conveyance *bona fide,* for a valuable consideration, the question arose which should be preferred. It was fully admitted, that the fraudulent conveyance was void as against the voluntary settlement, which was attempted to be avoided by it under 27 *Eliz.* And it was asked by counsel with an air of triumph, *How can a person convey a good title to a purchaser, when in his own hands the estate is a perfect nullity ?* Yet Sir *James Mansfield,* Ch. J. thought that they could not, without overturning the settled and decided law, hold that the prior conveyance should defeat the one from the fraudulent grantee, made *bona fide,* for a valuable consideration.

Other cases might be cited in which the same principles have been recognized ; but this seems to me unnecessary, as no opposing authorities have been adduced, nor have any come within my knowledge. All the decisions agree in this, that the *bona fide* purchaser is to be protected, and substantially assign the same reason for it, though different writers and judges present their ideas in somewhat different language. Some say, the fraud is *purged by matter ex post*

intent, and a voluntary conveyance is made to a child in consideration of love and affection, if the grantor is in prosperous circumstances, unembarrassed, and not considerably indebted, and the gift is a reasonable provision for the child

*facto ;* others say, that what the grantee doth for *valuable consideration, the grantor doth ;* others say, that if the grantee assigns for valuable consideration, this *is all one as though the grantor did it ;* and *Roberts* in his treatise on *Fraudulent Conveyances,* page 495. calls it *that sort of consideration which springs out of a transaction subsequent to a voluntary and fraudulent conveyance, and restores such conveyance to its legal validity under the statute 27 Eliz. as an authentic channel through which a title may be conveyed.* All agree, that the first fraud cannot be imputed to the last *bona fide* grantee; and when they go farther back, and give a reason for this, it is because the conveyance was good between the parties.

But it has been said, that all these decisions were had under the statute of 27 *Eliz.* and are to be accounted for by a proviso in favour of purchasers for good consideration, and *bona fide.* But this proviso does not apply to purchasers under a fraudulent grantee, directly, or in terms. Both the enacting part of the statute and the proviso, apply wholly to the first fraudulent conveyance. The former declares the fraudulent conveyance void; the latter, out of abundant caution, declares that it shall not extend to *bona fide* purchasers for valuable consideration.

If either the enacting part, or the proviso, extend to a purchaser under a fraudulent conveyance, it is by consequence merely. In this point of view did Lord *Holt* consider it, in bringing *Andrew Newport's* case within the proviso. And for this purpose, let us again attend to his words, and I think it will appear, that although Lord *Holt* said that case came within the proviso, he drew it as a mere conclusion from the principles on which I insist. After having stated that the first mortgage was good between the parties, and contending from thence, that when the mortgagee assigns for valuable consideration, this is all one as if the first mortgage had been on good consideration, he adds, *for now the second mortgagee stands in his place, and therefore is within the proviso of 27 Eliz. ;*—or, in other words, the proviso would have saved the mortgagee, had his mortgage been *bona fide,* and therefore it will protect a *bona fide* purchaser under him, who stands in his place. This I take to be the only case in which the proviso has been mentioned; and the use here made of it places the statute of 27 *Eliz.* on the same ground on which every body will agree that our statute stands without one, and the same as that statute also would have stood without one.

It is not unusual to insert in statutes, provisos, from abundant caution, to prevent false construction. When this is the case, they do not vary the statute in the least; they only inform courts what the statute, in the view of the legislature, ought to be. Of this nature is the proviso in question; and of this nature also is a proviso to the 13 *Eliz.* which is nearly in the same words. But when the legislature enacted the statute of this state, the construction of those statutes had become so well understood, that no such proviso was thought necessary; and none was introduced into the first paragraph of the act, though in the second there is an exception of similar import with the provisos in the statutes of *Eliz.* But this I do not wish to insist on; because all agree, that

according to his state and condition in life, comprehending but a small portion of his estate, leaving ample funds unincumbered for the payment of the grantor's debts ; then such conveyance will be valid against conveyances existing at the

our statute does not affect a *bona fide* conveyance for valuable consideration ; and this places every conveyance of that description on the same ground precisely as they stand under the 13 or 27 *Eliz.*

Again, if the proviso was considered in *England* as affecting a purchaser under a fraudulent grantee directly ; why did not Lord *Holt* mention it as decisive of the case ? Why go through a course of reasoning to bring the case within it ; and this by placing the second conveyance on the same ground as though it had been made *bona fide,* and on good consideration in the first instance ? And why has the proviso now been referred to, or even named, in any of the other cases, except *Andrew Newport's* ? These questions, I leave for gentlemen who think differently from me to answer.

I shall now conclude my remarks, by shewing that Lord *Kenyon* in deciding the case of *Parr* v. *Eliason* and others, reported in 1 *East* 92. adopted the principles I contend for, and appears to have had no idea that they depended at all on the proviso of any statute. This was an action of trover for a bill of exchange. The plaintiff had endorsed the bill on an usurious consideration ; but the defendant had received it on a *bona fide* consideration, without knowledge of the usury. Judgment was for the defendant ; and Lord *Kenyon* remarked, " that where the bill itself, in its original formation, is given for an usurious consideration, the words of the statute of *Ann.* are peremptory that the assurance shall be void ; and the construction put upon the statute has gone far enough in saying that it may be avoided in the hands of an innocent indorsee without notice. But no case has gone the length contended for." He cited the case of *Prodgers* v. *Langham,* 1 *Sid.* 133. and relies on the general doctrine that a conveyance voluntary in its creation may be rendered valid by an after purchase for valuable consideration. Here we find the principles adopted in the other cases extended to the subject of usury ; but if they were to be accounted for entirely by the proviso in the statute of 27 *Eliz.* no such use of them could with propriety be made It is perfectly evident, therefore, that he did not so consider them.

EDMOND, J. was of the same opinion.

REEVE, J. The question in this case is this : where one man makes a conveyance to another, with an intent to defraud his creditors, and the grantee of this conveyance conveys to a *bona fide* purchaser, is the conveyance in the hands of the *bona fide* purchaser void against creditors ?

I would observe, before I consider the point in controversy directly, that one may purchase of another without any intention to aid him in any fraudulent purpose ; and yet the seller, when he conveys, may intend thereby to defraud his creditors. In such case, the conveyance is not void in the hands of the purchaser ; for there was no secret trust that can be presumed between the grantor and grantee. The question then is this : where there is a fraudulent design in the grantor so to dispose of his property as to defraud his creditors, and the grantee receives it with a view to aid in the design, is such conveyance

*Hartford,*
June, 1816.

Salmon
*v.*
Bennett.

time. But though there be no fraudulent intent, yet if the grantor was considerably indebted and embarrassed at the time, and on the eve of a bankruptcy ; or if the value of the gift be unreasonble, considering the condition

void against creditors in the hands of a *bona fide* grantee of the fraudulent grantee ?

Before I proceed to maintain the affirmative of this question, I would observe, that no argument can be drawn from the cases under 27 *Eliz.* in favour of the *bona fide* purchaser, who purchases from the *voluntary* grantee, in favour of a *bona fide* purchaser of a *fraudulent* grantee. A careful attention to the different objects of the two statutes must afford the most satisfactory conviction to the mind, that because the voluntary grantee under the 27 *Eliz.* can convey to his grantee for a valuable consideration a perfect title, which cannot be defeated by any subsequent grant of the voluntary grantor to another for a valuable consideration, this furnishes no authority to conclude that the fraudulent grantee under 13 *Eliz.* can, for a valuable consideration, convey a perfect title to his grantee. All the cases adduced in support of such a position arise under the statute 27 *Eliz.* And here we must keep in view, that where there is a voluntary grant, and the grantor has creditors, it is fraudulent, and within the purview of the 13 *Eliz.;* and where there is a voluntary conveyance, and there are no creditors, it is within the purview of 27 *Eliz.*

The objects to be attained by these statutes are *toto coelo* different.

The object of 27 *Eliz.* is to secure the purchaser for a valuable consideration from being defeated of his title by a mere voluntary grant. This is the sole object. It therefore was immaterial whether the sale for a valuable consideration was made to *C.,* by *A.* the grantor, or by *B.* his voluntary grantee. In both cases, the object of the statute was attained ; and *C.*'s title, in both cases, would be a perfect title. And lest the words in the statute should be mistaken, the statute expressly provides, that in the case put, *C.* shall hold the estate, although *A.* should convey it after *B.*'s conveyance to *C.* for a valuable consideration to *D.* In this case, as the object of the statute was to prefer the purchaser with consideration to the purchaser without, it might well be said, that what *A.* could do, *B.* could do. As *A.* in that case could, notwithstanding his voluntary grant to *B.,* convey a perfect title to *C.* for a valuable consideration ; so could *B.* And although *A.* should, for a valuable consideration, convey to *D.* ; yet *C.* would hold it, since his was the older title.

The object of 13 *Eliz.* was to secure creditors from being defrauded of the debts due to them, by a fraudulent conveyance, by their debtors, of their property, to some fraudulent grantee. If *A.* had, with a view to defeat his creditors, run away with his money, having sold his property to a *bona fide* purchaser, who knew nothing of *A.*'s views, the conveyance would have been good in the hands of such purchaser. The precise danger intended to be guarded against is *A.*'s fraudulently conveying to *B.* who is conusant of the fraud, and who accepted the conveyance to give aid to his fraudulent views. In this case, the object of the statute will be defeated by validating the conveyance of the fraudulent grantee to a *bona fide* purchaser. For that security, such as it was, which the statute intended to protect for creditors, is, by this means, lost, and the object of the statute is not attained.

in life of the grantor, disproportioned to his property, and lea-
ving a scanty provision for the payment of his debts ; then such
conveyance will be void as to creditors. In the case under
consideration, it is manifest there was no fraudulent intent; the

Under the statute 27 *Eliz.* the object of the legislature was to give a preference
to the purchaser with consideration over the volunteer ; which object was as
effectually attained in the case put by a conveyance by *B.* to *C.*, as by a convey-
ance by *A.* to *C.* The rule, therefore, that what the grantor can do, the voluntary
grantee can do, accomplishes the intent of the 27 *Eliz.* But the rule that what
the fraudulent grantor can do, the fraudulent grantee can do, defeats the object
of the 13 *Eliz.*

There is no doubt but the fraudulent grantor might have conveyed to *C.* a
*bona fide* purchaser, and it would have been good. The creditor's rights are
here secured : for *A.*, by the sale to *C.*, is enabled to pay his debts, and there is
no presumption that he will not. But if *A.* conveys to *B.* fraudulently, and *B.*
the fraudulent grantee conveys to *C.* a *bona fide* purchaser ; *A.* by this is dis-
enabled to pay his debts. He is not, as in the former case of his own convey-
ance, as able to pay as before ; and the whole property is withdrawn from the
creditors, either to increase the estate of *B.*, or the avails of the estate upon a
secret trust between *A.* and *B.* are to be applied to the benefit of *A.* at the
expense of his creditors.

I apprehend, it is the confounding of the different objects of the two statutes,
that has ever occasioned any difference of opinion respecting this interesting
question. The obvious meaning of the words of the statute, which declares all
such conveyances to be utterly void against creditors, is, that as against credit-
ors the grantee has no title, but the estate remains in the grantor, liable to his
debts ; and so has ever been the understanding of all men. If the grantee has
no title against creditors, it would be natural to conclude that he could convey
none against creditors. It must be admitted, that in ordinary cases, it is so that
a person having no title cannot convey any. The maxim *quod non habet non dabit,*
is a maxim of general applicability. I am fully aware, that there are cases
where a title may be conveyed by one who has none, which I will presently
notice ; but they all stand on grounds very distinct from this question, and the
reason of those cases bears no analogy to this.

When we give a construction to a statute, if we find that such construction
will probably defeat the object which the legislature had in view, we ought
to be very jealous of it : nay, I lay it down as a sound rule, that it is not the
true construction. No facility to evade the object which the statute had in
view to accomplish, ought ever to be admitted. The object which the law
had in view cannot be mistaken. It doubtless was to prevent persons conveying
their property into the hands of others, between whom and the grantor there
was a secret trust that the grantor should have the benefit of it at the expense
of creditors, by which means it was designedly withdrawn from being a fund
to satisfy creditors, and converted into a fund to support the debtor.

According to the rule laid down, the construction that the fraudulent
grantee can convey a good title to the *bona fide* purchaser, will tend to defeat
this object of the law ; and of course, such conveyance will not be good.

That it will defeat the object of the statute, I think, is clear. When the
grantor and grantee are combining to defraud the creditors of the grantor, and

gift constituted but a small part of his estate ; was a reason-able provision by the father for the son, according to their condition and circumstances ; and much more than sufficient for the payment of the debt due to the plaintiff remained in the hands of the grantor.   I am, therefore, of opinion that

knowing that whilst the property remains in the hands of the grantee, their dishonest purposes will be frustrated, if the fraud is discovered, there will be, in many cases, no difficulty in finding a real *bona fide* purchaser, and in many others, one apparently so.   And all this is a part of the plan entered into to accomplish the fraud, and defeat the law.   The law, it seems to me, is made in vain, if such an evasion of it is to be sanctioned by the adjudications of courts.

Again, I apprehend, it will not be found, that where the words *utterly void,* or *void to all intents and purposes,* are used in a statute, such a construction has ever been given as to validate grants, conveyances or sales, in the hands of a *bona fide* purchaser, provided there exists a claim of any person against such grant or sale in the hands of the first grantee, obligee, or promisee.

Hence it is, that promissory notes infected with usury or gambling, although negotiable in the hands of a *bona fide* holder, are of no avail against the claims of the maker.   It is impossible to conceive of a stronger case than this; for here is not interposed the claim of a third person, who had in no way contrib-uted to the conveyance; but the maker himself, who was party to the wrong act, who had put the note into market, and contributed to its negotiability. This was a determination in a commercial country, where every nerve is strained to give effect to a note in the hands of a *bona fide* holder.   Why then was not such a note holden good against the maker ?   Surely, it would have been, if it had been possible : for the claims of equity, and the still superior claims of policy, seemed to require that it should have been held good against the maker. But the truth is, and so it appears from the declarations of Lord *Mansfield*, it was impossible ; the words of the statute were too strong ; it was made *void to all intents and purposes.*   A policy greater than the opposing policy of com-mercial regulations required that no such construction should be given as would defeat the object of the law ; for in this case, as in the case before the court, if the maker of the note and promisee combine to evade the law of usury, it is but for the maker to execute a negotiable note to the promisee, and then the promisee to negotiate the note ; if this note becomes valid, the usury is pur-ged, and the statute ceases to have the least effect.   The policy of the law, which was to prevent such transaction from being a valid transaction, will never suffer such an evasion to defeat its provisions ; and this, although there seems to be no equity on the part of the maker, and great equity on the part of the holder ; but all this must yield to the superior equity of general justice. It is a much stronger case than the one before the court, to induce the court to give effect to the transaction.   For this case resembles the other in this, that it is declared *to be utterly void as against creditors,* which is surely as strongly expressed as in the statute of usury, which is *void to all intents and purposes.*   Nothing can be more void than to be *utterly so ;* for in that case, it is void *to all intents and purposes.*   To give effect, then, to the grant of the fraudulent grantee in the hands of the *bona fide* purchaser, would have the same effect to defeat the provisions of this statute, as it would to defeat the provisions of the statute of usury, to give effect to a usurious note in the hands

the indebtedness of the grantor at the time of the conveyance, the only circumstance that can operate against it, is not such as ought to set it aside, especially as a great length of time has elapsed, and the estate has passed into the hands of a *bona fide* purchaser, for a valuable consideration.

of a *bona fide* holder. Lord *Mansfield* found it impossible to give effect to such note, by reason of that statute. For the same reason, he would have found it impossible to have given effect to a conveyance from a fraudulent grantee to a *bona fide* purchaser. Then there is in point of equity this marked difference in favour of the present decision, that the person attempted to be injured by the fraudulent grant had in no measure contributed to the fraud, and had no hand in promoting the conveyance. In both cases, the equity of the *bona fide* purchaser is equal ; but in that of the promissory note, the maker has no equity, whereas in the case of the fraudulent conveyance the equity of the creditor is equal at least to that of the purchaser ; for he had trusted the grantor on the credit of his estate, which is, by the conveyance, attempted to be withdrawn out of his reach ; and this was the equity which the statute meant to protect. If therefore, in a case governed by similar principles, and where the claim of the party that the *bona fide* holder shall not be protected against his claim, is less equitable than the claimant's in the present case, we find the law distinctly laid down that the *bona fide* holder must yield to the superior force of the positive declarations of the statute; surely, in this case, *a fortiori* it must be a successful analogical argument, that the claims of the *bona fide* grantee of the fraudulent grantee must yield to the superior force of the regulations of the statute against fraudulent conveyances.

I have heard it said, that on every principle the equity of the *bona fide* purchaser is as great as the equity of the creditor, so that even on the hypothesis that such purchaser has no title, neither has the creditor any ; and being in equal equity, and the purchaser being in possession, such possession shall not be disturbed. The answer to this is, admitting the equity to be equal, and one in possession, yet that possession against the claim of the other avails nothing. If the other's claim is elder in point of time, no maxim of law stands on firmer ground than this, *qui prior est in tempore, potior est in jure ;* and this maxim always, without any exception from its universal influence, settles at once the opposing claims of all, who, without legal title, have equal equity. The claim of the purchaser was unknown long after that of the creditor existed. By claim, I do not mean a specific lien on the thing conveyed, but only that equitable right which every creditor has to the property of his debtor, that it shall not be taken from him by a fraudulent contrivance between grantor and grantee. This the law considered as a right of sufficient magnitude to protect against a fraudulent conveyance ; and this right must have existed prior to the purchaser's claim ; for if it had not, there could not have been a fraudulent conveyance.

The advocates for the purchaser's claim contend, that the creditor has no specific lien on the property conveyed, so that the debtor might convey his whole estate to a *bona fide* purchaser ; and such conveyance, it is not pretended, can be impeached ; that the fraudulent grantee stands in the place of a grantor ; and that whatever the grantor might do, the grantee, having all the rights of the grantor, (for the conveyance is good against the grantor) may also do ; and as the grantor may convey to a *bona fide* purchaser, and the conveyance be valid,

Salmon
*v.*
Bennett.

In this opinion TRUMBULL, EDMOND, SMITH, BRAINARD, BALDWIN, GODDARD and HOSMER, Js. concurred.

GOULD, J. There is no case, I trust, in which a conveyance to a child, founded upon natural affection, has been adjudged void, as to *creditors,* for the mere want of a valua-

although the property conveyed is withdrawn from the reach of the creditor ; so the grantee may convey to a *bona fide* purchaser, and it will be valid, although the property is withdrawn from the reach of the creditor ; and by this means, no greater injury is done to the creditor than when the debtor himself conveys.

I apprehend, that a fallacy lurks beneath this reasoning. When the debtor conveys his property to a *bona fide* purchaser, he is not by this means disabled from paying his debts. It probably will be the means of enabling him to pay his debts with greater facility. There is no presumption that he has the least intention of fraud, or that his creditors will be injured thereby. As the creditors had not secured any lien on the property, the law never intended to prevent the debtor from selling his property, always presuming that he meant to deal fairly with them. All that can be said in the case is, that it is possible for the debtor with more ease to defraud his creditor, when his property is sold and converted into cash, than when exposed to view. But the law does not calculate upon any such possible case of fraudulent intention, but always presumes the contrary. Upon the supposition that the debtor is unwilling to pay his honest debts, after having conveyed away his property for a valuable consideration, he is not on that account the less able to pay ; and the law is always open to the creditor to enforce his claims ; and the remedies provided by law must be presumed to be abundantly sufficient to enforce them. If the property is not liable to be taken, being sold, the body is liable to be taken on a *ca. sa.,* and holden until payment is made, which the law presumes will be made to procure the release of the body.

How different is the case when the fraudulent grantee conveys to the *bona fide* purchaser ! The debtor is, by his fraudulent conveyance, utterly disabled to pay his debts ; for he can have no demands upon his grantee for the purchase money. No fund is created to pay his debts. The fund of the fraudulent grantee is indeed encreased ; and all this at the expense of the creditors, without their having any possible chance of realizing any thing from their debtor's property. The object of the statute was to provide against the property of the debtor being conveyed away fraudulently out of the reach of the creditor. Of this there is no danger, when it is an honest conveyance, by the debtor himself. The law would not calculate against this. But when the property is fraudulently conveyed away, and then by the grantee conveyed to another, the very thing which the law meant to prevent is accomplished. The creditor is defeated of any effectual remedy ; and therefore the law has calculated against such an event, and deemed such conveyance invalid.

The two cases are so far from resembling each other, that they are in direct opposition to each other. In the one case, no right of the creditor is affected, or endangered. There was, in presumption of law, no fraudulent intention to defeat creditors of their claims, but an honest intention to satisfy them. In the other, the object was to defeat the creditor's claims ; and by the conveyance of the fraudulent grantee to a *bona fide* purchaser, this object is accomplished.

ble consideration ; though there are several adjudications the other way. The question in *Doe* v. *Manning,* it should be recollected, arose under the statute 27 *Eliz.* : and it is familiar to the profession, that *purchasers,* for whose protec-

The very thing which the statute intended to prevent, takes place, if a conveyance to a *bona fide* purchaser by the fraudulent grantee, is holden valid.

I have heard an argument suggested, to avoid the force of this reasoning, which appears to me so wholly unfounded in principle, that I should not have noticed it, as it was not urged by the counsel in the argument of this case, were it not that the seeming equity attending it may possibly induce some to believe it worthy of consideration. It is, that to secure the rights of the creditors, and also of the *bona fide* purchaser, the sale is to be regarded as valid, and the purchase money in the hands of the fraudulent grantee as belonging to the creditors, and that the same may be recovered by the creditors out of his hands ; that, in fact, he is become debtor to the creditors for so much money received to their use. It is impossible to conceive how a creditor is to obtain his debt from the grantee in the event of the avails being insufficient to pay all the debts. Is he liable to the creditor who first sues for his whole debt ? Or is the court to go into a settlement of the claims of all the creditors, and strike an average, and judgment to be rendered for this average sum ? But it is decisive, that the grantor and grantee can never compel a creditor to change his debtor, by any thing which they can do.

It is contended, that it is analogous to other well known cases to secure the *bona fide* purchaser. It is compared to sales in market overt ; to sales at vendue by the sheriff ; to the case of currency obtained by theft or fraud, and passed to others ; for in none of these cases has the seller any title to the article sold, and yet the purchaser is protected.

All these cases, and every other governed by the same principles, are exceptions to the rule *quod non habet non dabit.* But to an attentive observer, they will not seem to have any analogy to the case before the court. These are all cases in which the purchaser is protected, not on account of his superior equity ; for the man who purchases a stolen horse in market overt has no greater equity against the original proprietor of the horse than the man who innocently purchases of a thief at private sale. The purchaser has paid his money in both cases ; and if the horse is reclaimed by the original proprietor, he must lose his money in one case, and not in the other. We must then look to some other principle which governs in the excepted cases than a regard to the equity of the purchaser's case ; for that is as strong in the one case as in the other, and yet in one it is wholly inoperative. The truth is, these cases are governed wholly by principles of policy. They are so determined, not from a regard to any private right, but from a regard to public good. The laws of the land, which are always deemed salutary, will be defeated of their intended operation, if the decisions were against the purchaser. No man would venture to purchase of strangers at a fair, or at a sheriff's sale, if he was liable to lose the property purchased. It would discourage all dealing among men, if a man's right to currency was called in question after having been fairly received. To prevent, therefore, the salutary laws of society from being frustrated in their operations, the superior equity of him who is *prior in tempore,* yields to an inferior claim. But where no such reason of policy exists, I trust, no case will be found where

tion that statute was made, have always been more favoured in the construction of it, than *creditors*, under that of the 13 *Eliz.* The former not having trusted to the personal responsibility of the grantor, but having advanced money,

a purchase from one who has no title has been protected from the claims of others.

*B.* sells to *C.*, and he to *D.* The article sold passes through a variety of hands. This furnishes no argument in the mouth of the last purchaser against the claim of *A.*, if he has title, and *B.* has none, however inconvenient it may be to disturb the possession of the last purchaser, and all the intermediate sales ; and surely, in point of policy, there is as much reason to protect the last purchaser as in the case before the court.

What law will be defeated of its operation, if the *bona fide* purchaser of a fraudulent grantee cannot hold his land against a creditor, when the title of the grantee was utterly void as against such creditor ? Surely none. But on the other hand, the intention of the statute against fraudulent conveyances would be often defeated, and very great facility would be afforded to evade it, if such conveyances should be held valid. This view of the subject, I apprehend, must convince every person that the cases argued from are in no respect analogous to the case before the court.

But, it is said, there are cases to be found where a conveyance, fraudulent in its creation, may become valid by matter *ex post facto ;* as where *A.* conveys to *B.* without valuable consideration, and *B.* to *C.* for valuable consideration, *C.* can hold this estate   The truth is, that such a conveyance is not fraudulent, unless there were creditors ; but in the case alluded to, where *A.* conveys to *B.* without consideration, and *B.* to *C.* for one, and then *A.* conveys to *D.* for a valuable consideration, it is held that *C.* will hold against *D.* But these are cases under 27 *Eliz.* rendering conveyances fraudulent as to purchasers void. But these cases are governed by totally distinct principles from those under the statute 13 *Eliz. ;* and these are the cases where it is said what the grantor *A.* can do the grantee *B.* can do, so that if *A.* had conveyed to *C.* upon valuable consideration, and then to *D.*, *C.* would hold against *D.* So, if *B.* had done the same by conveying to *C.*, it would be good, and he would hold against *D.*, as much as if *A.* had conveyed to *C.* and then to *D.* In such case, no right of any person is affected ; for *B.* had, when he conveyed, the whole title. It was void as to no person then in being ; for there were no creditors. If there had been, it would have been void as against the creditors in the hands of *B.* But it is necessarily a case where there are no creditors. *B.*'s title, at the time he conveyed to *C.*, for a valuable consideration, was good against all the world. Nothing, then, can be more reasonable, than to say, what *A.* could have done, *B.* might do ; for no person's rights could be affected by his conveyance, and when *C.* had obtained it for a valuable consideration, he ought to hold it against *D.* And here the maxim applies, *qui prior est in tempore, potior est in jure.* But it is said, that the statute makes *A.*'s conveyance to *B.* void as against a future purchaser of *A.* for a valuable consideration. Here it will be observed, that it was not void until *D.* purchased ; for until a purchaser appears, it is good. But where there are creditors, it is void in its creation against them. If this conveyance ever became void, it was when *D.* purchased ; but before that time, *C.* had purchased of *B.* for a valuable consideration, and

only upon a conveyance of the *specific* property in contro-versy, and in confidence of acquiring an immediate title to it, are regarded as having a higher equity than general creditors. This diversity of construction is agreeable to all analogy.

*Hartford,*
June, 1816.
Salmon
*v.*
Bennett.

*B.* will be considered as standing in *A.*'s place, and what was done by *B.* as done by *A.* But when there are creditors, *B.* is a fraudulent grantee, and has no power to convey to *C.* so as to affect creditors. But under 27 *Eliz. B.* is not a fraudulent grantee when he conveys to *C.* for a valuable consideration. The cases bear no analogy to each other.

But what is decisive of the question is, that the statute, by its proviso, has provided that the conveyance of *B.* the voluntary grantee of *A.* for a valuable consideration, shall be valid; as in the statute 13 *Eliz.* provision is made, if the grantor conveys for a valuable consideration to a *bona fide* purchaser, the conveyance is good; and it is no matter if his motives were, that he might thereby withdraw his property from the view of his creditors; the grantee not being fraudulent, he shall hold the property. So too the 27 *Eliz.*, after enacting that a conveyance without a valuable consideration, shall be void as to a pur-chaser with a valuable consideration, then provides, that no conveyance where there has been a valuable consideration paid by a *bona fide* purchaser, shall, notwithstanding this act, be impeached. This proviso can relate to no con-veyance but one made by the voluntary grantee. It cannot relate to the convey-ance made *to* the voluntary grantee; for that is not made with consideration. It cannot relate to a second conveyance with consideration by the grantor; for in the body of the act it is provided, that such conveyance shall be good against the voluntary grantee; and it would be perfectly ridiculous to provide in the proviso, that such conveyance should not be impeached, any thing in the act not-withstanding, since the whole object of the act was to validate it. It cannot then relate to any thing but the conveyance by the voluntary grantee, providing that in case he conveyed for a valuable consideration, that conveyance should not be impeached, notwithstanding the conveyance to him was voluntary.

The obvious meaning of the statute and the proviso was this—if a grantor conveys to a grantee without consideration, and then conveys to a grantee with consideration, the first shall be void in that event, and the last prevail. But in case the first grantee conveys to another for a valuable consideration, it shall never be impeached by any subsequent conveyance by the first grantor. And nothing can be more reasonable than this; for the clear intention was, that a *bona fide* purchaser, who had paid a valuable consideration, should be preferred to a voluntary grantee; and this intention is as completely fulfilled when the voluntary grantee conveys for a valuable consideration, as when the original grantee does. It may well be said, that what the grantor can do, the grantee can do. In both cases, the purchaser for a valuable consideration holds, and when the voluntary grantee conveys, the right of no person is affected by it.

There is, then, no analogy between the cases of conveyance by the grantee under the 13 *Eliz.* and the 27 *Eliz.*; for under the 13th, the conveyance by the grantor is in its creation void as to creditors; under the 27th, it is not void in its creation as to any person. Under the 13th, when the grantee conveyed, he had no title against creditors, and therefore conveyed none; under the 27th, the grantee's title, when he conveyed, was good against every person, and therefore, he could, and did, convey a title; and the statute expressly provides,

Hence, the construction of the statute 27 *Eliz.* has always been more rigorous, as against conveyances not founded on valuable consideration, than that of the statute 13 *Eliz.*

As to *creditors,* the want of a valuable consideration may be, under circumstances, a *badge* of fraud ; but does not, *per se,* render the conveyance fraudulent. Whether an actual fraudulent *intent* is necessary, to render it so, is a distinct question. It is sufficient, for the present purpose, that *something more* than the mere absence of a valuable consideration, must appear, in order to invalidate such a grant. Evidence of indebtedness, at the time, at least, and, as I conceive, of indebtedness, amounting, or approximating, to embarrassment, must be shown. For if any degree of indebtedness, however small, would defeat such conveyances ; they would, virtually, be *per se* fraudulent : since no individual, perhaps, or, at least, hardly any one, in the community, is at any time, *absolutely* free from debt. And as I discover, in this case, no such evidence, as I suppose, the rule requires ; I cannot pronounce the conveyance to *Salmon Sherwood,* fraudulent. Holding this opinion, it is, of course, unnecessary for me to consider, whether the deed to the defendant would be void, as against creditors, supposing the first conveyance to have been so.

Judgment to be given for the defendant.