## LLOYD ET AL. v. FULTON.

1. As the provision of the English Statute of Frauds touching promises made in consideration of marriage is in force in Georgia, a promise there made, but not in writing, to settle property upon an intended wife, is void. Such promise after marriage is also void for want of consideration.

2. The indebtedness of a husband at the time of his execution of a conveyance by way of settling property in trust for the sole and separate use of his wife and children is only a presumptive proof of fraud which may be explained and rebutted; and this being the established doctrine in Georgia, where the property in question is situate, such a conveyance was upheld against existing creditors where the debtor reserved property greater in value than two and a half times the amount of his debts, and where the transaction rested upon a basis of good faith, and was free from the taint of any dishonest purpose.

APPEAL from the Circuit Court of the United States for the Northern District of Georgia.

Fulton, the appellee, having by his marriage acquired large means, which he had verbally agreed before and after his marriage should be held for the sole and separate use of his wife, executed the following indenture:—

"STATE OF GEORGIA, *Columbia County.*

"This indenture, made this, the fourteenth day of September, 1864, between Montroville C. Fulton, of the county and state aforesaid, of the first part, and James S. Hamilton, of the same county and state, of the second part, witnesseth that said party of the first part, for and in consideration of the natural love and affection which he has and bears towards his wife, Virginia C. Fulton, as well as in consideration of the sum of ten dollars to him in hand paid by said party of the second part at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath given, granted, bargained, sold, delivered, released, conveyed, and confirmed, and by these presents doth give, grant, bargain, sell, deliver, release, convey, and confirm, unto the said party of the second part, and to his successors and assigns, subject to the uses and trusts hereinafter expressed, the following-described real and personal property; to wit (*the description of the property is omitted*).

"In trust, nevertheless, to and for the sole and separate use, benefit, and behoof of Virginia F. Fulton, wife of the said party of the first part, for and during the term of her natural life, free from the debts, liabilities, or contracts of the said party of the first part, or any future husband, with remainder at her death to her children then in life, or who have issue alive at that time (the issue of any deceased child taking the parent's proportionate share); but should she die leaving no child, or issue of a child, surviving her, then with remainder to her heirs at law. Provided

always, and it is distinctly understood, that said Virginia F. Fulton, at any time after the execution of these presents, during coverture or widowhood, may, by her last will and testament, give, demise, or bequeath the entire trust-estate, with income and increase thereof, to such person or persons as she may see fit, as if she were sole and unmarried ; but in case of her death without leaving any will, or of any legal disability to make a will, then the trust-estate shall, after her death, vest as aforesaid in her children or other heirs in law. And provided, further, that the said Virginia F. Fulton shall be authorized at any time, upon the death, resignation, or removal of the party of the second part, or any of his successors, by instrument in writing, under her hand and seal, to appoint the said party of the first part, or any other fit and proper person, trustee in the place and stead of the previous trustee ; and the person so appointed shall immediately and *ipso facto* become entitled to all the right and authority hereinafter granted, unless restrained in the deed of appointment, which said Virginia F. shall be authorized to do. And provided, also, that the said party of the second part, or the party of the first part in the event of becoming trustee under this instrument, shall be authorized at any time to sell, mortgage, lease, exchange, or otherwise dispose of at discretion, the trust-estate, or its increase, or any portion thereof, reinvesting the proceeds in such other property, real, personal, or mixed, as may be deemed best by him ; and shall also be authorized, for the purpose of supporting, maintaining, and educating the said Virginia F. and her children, to encroach upon the corpus of the estate without authority from any court. That all subsequent trustee or trustees shall only be authorized to sell, lease, or exchange, and to reinvest, upon the written consent of said Virginia F., and for the purpose of support, maintenance, and education, shall only be allowed to encroach upon the corpus during the existing war, and upon the written direction of said Virginia F. so to do.

"And provided, finally, that the separate receipt of the said Virginia F., notwithstanding coverture, shall be a sufficient and legal discharge to the party of the second part or party of the first part (in the event of his appointment as trustee) for the yearly income of the trust-estate, or any portion of the corpus consumed, and maintenance and education, and that they shall not be required to make annual or other returns to the court of ordinary or other court. That in the event of the death of the said Virginia F. without making a will, and leaving children, or issue of children, the party of the second part or the party of the first part, if the

trustee, shall be authorized to keep the estate together, exercising the same power hereinbefore granted until such time as he shall deem it advisable to distribute the estate among the remainder-men ; but in the event of the death of the said Virginia F. intestate, and leaving no child, or issue of a child, surviving her, then the trustee for the time being is to distribute the estate among the heirs at law immediately.

" In witness whereof, the said party of the first part hath hereunto set his hand and seal, the day and year first above written in duplicate.

"MONTROVILLE C. FULTON. [L. s.]

" Signed, sealed, and delivered in presence of us,

ROBERT MARTIN.
B. B. WILKERSON.
J. E. SMITH.
E. J. SHORT, J. I. C."

The property conveyed, exclusive of slaves, was of less value than that reserved; and the latter was, at the date of the indenture, worth more than double the amount of all his indebtedness.

The original trustee having resigned his office, the appellee was appointed in his stead. He had given his two promissory notes bearing date May 16, 1861, one payable Sept. 1 then next ensuing, and the other Sept. 1, 1862, each for the sum of $5,000, to James Lloyd. Suit having been brought upon these notes, judgment was rendered against him, May 15, 1871, and an execution levied upon the trust-property. He, as trustee, thereupon sued out an injunction restraining a sale. The Circuit Court having decreed in his favor, the case comes here on appeal.

The facts are further stated in the opinion of the court.

Sect. 1954 of the Code of Georgia, in force Sept. 14, 1864, reads as follows : —

"*Acts Void against Creditors.* — The following acts by debtors shall be fraudulent in law against creditors, and as to them null and void ; viz.: —

" 1. Every assignment or transfer by a debtor, insolvent at the time, of real or personal property of any description, to any person, either in trust or for the benefit of himself or any one or more of

his creditors, or any person appointed by him, to the exclusion of any other creditor in the equal participation of such property, *unless* such assignment or transfer is a *bona fide* sale, in extinction, in whole or in part, of the debt of the purchaser, and without any trust or benefit reserved to the seller or any person appointed by him.

" 2. Every conveyance of real or personal estate by writing or otherwise, and every bond, suit, judgment, and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking; a *bona fide* transaction on a valuable consideration, without notice or ground for reasonable suspicion, shall be valid.

" Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time of such conveyance."

*Mr. P. Phillips* for the appellant.

The deed upon its face shows that it is a voluntary conveyance; and there is nothing *dehors* which entitles it to any other character. The debt which it seeks to avoid was contracted four years prior to its execution. The *prima facie* presumption is, therefore, that the deed is fraudulent as against a prior creditor. *Howard* v. *Snelling*, 32 Ga. 206.

The conveyance, under the circumstances, is void. *Parish* v. *Murpheree*, 13 How. 93.

*Mr. John D. Pope, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

All the testimony in this case was taken by the appellee. He was complainant in the suit. Only two witnesses were examined, — himself, and his brother-in-law James S. Hamilton. There is no discrepancy in their statements. The facts lie within narrow limits.

Fulton, the appellee, married Virginia F. Hamilton, the daughter of Thomas N. Hamilton, in the year 1851. Her father was a man of very large fortune. Fulton received by her, before and after her father's death, more than $100,000. He had himself, at the time of his marriage, substantially nothing. His father-in-law died intestate in 1859. Before and after his marriage, Fulton promised his father-in-law to settle his wife's fortune upon her. After his father-in-law's death, he made the same promise to her brother, James S. Hamilton,

who administered upon his father's estate. Nothing in fulfilment of these promises was done by Fulton until the 14th of September, 1864. On that day he executed to James S. Hamilton the deed made a part of the bill. It conveyed the premises in controversy in trust for the sole and separate use of the wife of the appellee and her children. The deed contained, among other things, a provision, that, if Hamilton should die, resign, or be removed from the trusteeship, she might appoint her husband, or any other fit person, as trustee in his place. On the same day Hamilton resigned, and Fulton was appointed. On the 16th of May, 1861, Fulton executed to James Lloyd two notes of $5,000 each, one payable on the 1st of September following, the other on the 1st of September, 1862. There was due on these notes, at the date of the trust-deed, $11,780. Fulton then owed to other persons not exceeding $2,000. This was the extent of his indebtedness. The aggregate of his liabilities was less than $14,000. He retained in his hands property worth $36,000, besides non-enumerated articles worth $20,000 in Confederate currency. The point of depreciation which that currency had then reached is not shown. The property reserved was of greater value than that conveyed. After the execution of the deed, he was able to pay the notes. In 1862 he offered to pay them in Confederate currency, which was then but little depreciated. Payment in that medium was refused. His ability to pay continued until 1866. In that year he embarked in the enterprise of raising cotton in Arkansas. The result wrecked his fortune, and ruined him. He has since been unable to pay the notes. Suit was commenced against him upon the notes in February, 1868; and in May, 1871, judgment was recovered for $10,000 with interest, amounting to $6,447.81 and costs. Execution was issued and levied upon the trust-property described in the bill. This suit was brought to enjoin the sale, and the Circuit Court decreed in favor of the complainant.

The provision of the English Statute of Frauds, touching promises made in consideration of marriage, is in force in Georgia.

The promise of Fulton to Thomas N. Hamilton before the marriage was, therefore, void. Browne's Stat. Frauds, 220, 514.

His promise after the marriage was without consideration, and therefore of no validity. The same remark applies to the like promise to James S. Hamilton, the administrator.

The principle of the wife's equity has no application to this case. *Wicks* v. *Clarke*, 3 Ed. Ch. 63. The trust-deed was clearly a voluntary conveyance. Lloyd was a prior creditor.

Was the deed good against him?

This question is the core of the controversy between the parties.

Formerly, according to the rule of English jurisprudence, such deeds, as against such creditors, were void. *Townsend* v. *Windham*, 2 Ves. 10. The same principle was applied in such cases in this country. *Read* v. *Livingston*, 3 J. C. R. 481. It has been overruled in the English courts. *Lush* v. *Wilkinson*, 5 Ves. 384 ; *Townsend* v. *Westocot*, 2 Beav. 345 ; *Gale* v. *Williamson*, 8 M. & W. 410 ; *Shares* v. *Rogers*, 3 B. & A. 96 ; *Freeman* v. *Pope*, 5 Ch. App. Cases Eq. 544, 545. It has been also overruled by this court (*Hinde's Lessee* v. *Longworth*, 11 Wheat. 213 ; *Kehr* v. *Smith*, 20 Wall. 35) and in most of the States of our Union. The State adjudications to this effect are too numerous to be cited. We shall refer to a few of them. *How* v. *Ward*, 4 Me. 195 ; *Moritz* v. *Hoffman*, 35 Ill. 553 ; *Leroy* v. *Wilmarth*, 9 Allen, 382 ; *Miller* v. *Wilson*, 15 Ohio, 108 ; *Young* v. *White*, 25 Miss. 146 ; *Taylor* v. *Ewbank*, 3 Marsh. 329 ; *Salmon* v. *Bennett*, 1 Conn. 525 ; *Worthington* v. *Shipley*, 5 Gill, 449 ; *Townsend* v. *Maynard*, 45 Penn. 199.

Such is also the law of the State whence this case came to this court. *Weed* v. *Davis*, 25 Ga. 686. It is a rule of property there ; and this court is therefore bound to apply it, in the case in hand, as if we were sitting as a local court in that State. Jud. Act of 1789, sect. 34 ; *Olcott* v. *Bynum et al.*, 17 Wall. 44.

The rule as now established is, that prior indebtedness is only presumptive and not conclusive proof of fraud, and this presumption may be explained and rebutted. Fraud is always a question of fact with reference to the intention of the grantor. Where there is no fraud, there is no infirmity in the deed. Every case depends upon its circumstances, and is to be carefully scrutinized. But the vital question is always the good faith of the transaction. There is no other test.

Perhaps no more striking illustration can be found of the application of this principle, and of the opposition its establishment encountered, than is presented in the several cases of *Van Wick* v. *Seward.* On the 6th of November, 1817, Seward assigned a judgment to Van Wick, and gave him a guaranty that it was collectible. The judgment was a lien upon lands fairly to be presumed more than sufficient to satisfy it. On the 16th of April, 1818, Seward conveyed all his real estate, consisting of a farm of two hundred acres, to his son. The consideration of the deed was the payment of a specified sum to each of two daughters of the grantor, and an annuity for life of $500 to the grantor himself, who was then aged and infirm. The lands bound by the lien of the judgment were sold under execution, and bought in by Van Wick for a nominal sum. He thereupon sued Seward upon his guaranty, and recovered a judgment, which was docketed on the 13th of September, 1820.

Van Wick thereupon sold under execution and bought in the farm which Seward had conveyed to his son, and brought an action of ejectment to recover possession. The jury found that there was no actual fraud. The Supreme Court, nevertheless, upon the ground that the liability was prior to the deed, following the ruling of Chancellor Kent in *Reed* v. *Livingston*, gave judgment for the plaintiff's lessor. *Jackson* v. *Seward*, 5 Cow. 67. This judgment, upon grounds chiefly technical, was reversed by the Court of Errors of New York. *Seward* v. *Jackson*, 8 Cow. 423. Van Wick thereupon filed a bill in equity to avoid the deed. Chancellor Walworth concurred with the jury in the prior case as to the absence of fraud; and upon that ground, and the further ground of the circumstances of the sale of the property covered by the lien of the judgment, dismissed the bill. *Van Wick* v. *Seward*, 6 Paige, 63. The Court of Errors, upon appeal, affirmed this decree by a majority of one. The vote was fourteen to fifteen. *Van Wick* v. *Seward*, 18 Wend. 375. So ended the litigation. Perhaps in no case was the subject more elaborately examined. This case was fatal to the old rule. We think the new one more consonant to right and justice, and founded in the better reason.

In *Miller* v. *Wilson*, 15 Ohio, 108, the doctrine of this case

was expressly affirmed by the Supreme Court of Ohio, though the result upon the facts was in favor of the creditors. The facts of the case in hand are more favorable for the support of the deed than those in *Van Wick* v. *Seward.* Here the debtor reserved property worth more than twice and a half the amount of his debts. He expected and intended to pay all he owed. He continued able to do so until he lost his means by the hazards of business. The creditor rested supine for a long time. He did not take his judgment until more than eight years after the second note matured, and more than six years after the execution of the trust-deed. More than seven years had elapsed when the levy was made. The validity of the deed was then challenged for the first time. The creditor quietly looked on until after misfortune had deprived the debtor of the ample means of payment which he had reserved, and now seeks to wrest from the wife the small remnant of property which her husband acquired by means derived wholly from her estate, and which, in part fulfilment of his promise repeatedly made both before and after his marriage, he endeavored to secure to her and her children.

The evidence, as it stands in the record, satisfies us of the honesty of the transaction on his part. The non-payment and the inability to pay are the results, not of fraud, but of accident and misfortune. When Fulton executed the deed, he did what he then had the right to do, and was morally, though not legally, bound to do.

The proofs would not warrant us in holding that the settlement does not rest upon a basis of good faith, or that it is not free from the taint of any dishonest purpose.

> *The decree of the Circuit Court is affirmed.*