POLK COUNTY NAT. BANK v. SCOTT et al.

(Circuit Court of Appeals, Fifth Circuit. October 4, 1904.)

No. 1,324.

**1. FRAUDULENT CONVEYANCES—VOLUNTARY DEED FROM HUSBAND TO WIFE—PRESUMPTION OF FRAUD.**

A conveyance of land from a husband to his wife for a recited consideration of $1 will be deemed voluntary by a court of equity, but it is not for that reason alone conclusively presumed fraudulent and void as against existing creditors of the husband, nor will it be set aside at their suit under a statute which makes void conveyances made to defraud creditors merely because it is without consideration, where it is shown that in fact there was no fraudulent intent.

**2. SAME—SUIT TO SET ASIDE.**

A British subject, who resided on a farm in Florida, made a voluntary conveyance of the same to his wife, and afterward returned to England. At the time he was liable with others on certain notes given in Florida, which were secured by a conveyance to trustees of property owned by the makers jointly, and of greater value than the notes. He was wholly solvent, but had no other property of value in the United States. *Held,* that the conveyance was not fraudulent, and would not be set aside as such at suit of the holder of the notes who obtained judgment thereon by default in an action by attachment, it not being shown even that the property conveyed as security and remaining undisposed of was inadequate to pay the debt.

Appeal from the Circuit Court of the United States for the Southern District of Florida.

John E. Hartridge (C. C. Wilson and T. L. Wilson, on the brief), for appellant.

H. K. Olliphant, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is a suit in equity between the Polk County National Bank, a corporation chartered under the national banking act, and Anna C. Scott and Carteret C. Scott, citizens of Great Britain. The subject of the suit is 360 acres of land in Florida. The purpose of the original bill filed by the national bank was to cancel as fraudulent the title of Anna C. Scott to the land. In defense Mrs. Scott filed a cross-bill seeking the cancellation of a deed which the complainant bank received from the sheriff of Polk county, Fla., who sold the land as the property of Carteret C. Scott, the husband of Anna C. Scott. The case was heard on the bill, cross-bill, answers, and testimony, and decided against the complainant and in favor of the defendants and cross-complainant. To show the questions involved, a statement of the facts shown by the record must be made. Before 1901, the Polk County Bank was organized under the state laws with a capital stock of $25,000. Carteret C. Scott owned $5,000 of the stock; E. W. Codington, Warren Tyler, and others owned the other stock. The bank had its office and business at Bartow, Fla. It was agreed between the stockholders and others to organize a national bank, to which the assets of the Polk County Bank should be transferred. A. A. Parker, W. J. Emerson, Henry Esma Stuart, Anson

St. Clair Ford, and W. F. Wilcox became interested with Codington, Tyler, and Scott in the organization of the national bank. It was thereafter organized and chartered as the Polk County National Bank, with a capital stock of $50,000, and it is the appellant in this case. Before the organization of the national bank, and with the view to its organization, the stockholders of the state bank sold to A. A. Parker $12,000 of its stock. To make this sale to Parker it was necessary for the stockholders in the state bank to guaranty the payment of $12,000 of notes held by it, and also to become responsible personally that real estate owned by it, valued at $30,000, was in fact good for that sum. This was done by the stockholders executing notes payable to the state bank; and the notes so made were secured, and the makers thereof indemnified, by transferring to E. W. Codington and Warren Tyler, as trustees, the real estate and note assets so held by the state bank. When the complainant bank—the national bank—was organized, these notes, by agreement, became its property, being transferred to it. Codington and Tyler, the trustees holding the assets of the state bank, became respectively vice president and cashier of the national bank. The money paid by Parker for the stock purchased by him was used in paying part of the debt evidenced by the notes of the stockholders, and other payments were made on the debt until it was all paid except two of the notes, on which a balance remained due, not counting interest, of about $8,871. These two notes are the basis of this litigation. They are dated June, 1891, each for $6,000, payable to the Polk County Bank July 1st, one in 1895 and the other in 1896, with interest at 10 per cent. after maturity, and are signed by the following persons: W. J. Emerson, Warren Tyler, E. W. Codington, Henry Esma Stuart, Carteret C. Scott, Anson St. Clair Ford, and Warren Tyler, assuming the responsibility of W. F. Wilcox. The payment of the notes is by indorsement on them guarantied by the Polk County Bank. Before 1891 Carteret C. Scott owned the 360 acres of land, the subject of this suit. It is worth now about $10,000. He and his wife, Anna C. Scott, resided on it. On January 10, 1893, Carteret C. Scott, for $1 and "in consideration of love and affection," conveyed the land to his wife. The deed was prepared by attorneys who sometimes represented the complainant bank, and was duly filed for record and recorded in the proper office January 11, 1893. In 1893 the Scotts left Florida and returned to England, having first placed the land in the possession of a tenant or agent for Mrs. Scott. Excepting the claim sued on in this case, he owed but few debts in Florida, all of which he paid before leaving the state. The evidence shows that all parties concerned believed, and had good reason to believe, that the debt in question here was amply secured by assets transferred to Codington and Tyler as trustees. Carteret C. Scott owned about the date of his conveyance to his wife no property in the United States of any considerable value, but had $80,000 in property in Great Britain. On January 1, 1897, the trustees, Warren Tyler and E. W. Codington, made a report, a copy of which they sent to Carteret C. Scott, in which it is shown that there is still due on the notes made by Scott and others $8,871.40 (and interest), and to secure this they held $6,050 in notes uncollected, "of which half ought to be realized upon in time." The report also shows that they

also held 14 pieces of real estate, which they briefly describe and value separately, the aggregate value being $15,000. They conclude their report by saying that "the above is good property at these figures, and with any demand at all for property should net us these amounts, which would easily enable us to cancel all indebtedness and make a substantial dividend to the shareholders." A freeze occurred in Florida in December, 1894, and February, 1895. The evidence shows that it greatly lessened the value of real estate, and that the fall in value occurred immediately after the freeze. It appears, however, that there has been no decrease in values since January, 1897, the date of the report of the trustees in which they state that the real estate held by them is worth nearly double the amount of Scott's debt to the complainant. So far as the record shows, these trustees, one of them the vice president and the other the cashier of the appellant bank, still hold this property to secure the debt to the bank. On May 28, 1901, the national bank brought suit by attachment against Carteret C. Scott for $8,645.70, balance on the two notes. No one of the other joint makers of the notes was sued. The writ was levied on the real estate theretofore conveyed by Scott to his wife. Notice having been given by publication, judgment by default was rendered against Scott on October 9, 1901, for $9,832.30 and costs, the land levied on was sold by the sheriff, and purchased for $2,000 by the national bank, and on December 6, 1901, the sheriff conveyed the land to the purchaser.

We have only to apply the law to the foregoing facts. There is in Florida, as in other states, a statute making void as against creditors conveyances intended to delay or defraud them. Rev. St. Fla. 1892, § 1991. A voluntary conveyance is one without any valuable consideration. At law, if there is a valuable consideration, no matter if it is inadequate or even trivial, the conveyance is not deemed voluntary. But it is otherwise in a court of chancery. In equity, when the consideration is inadequate, the conveyance, at the suit of existing creditors of a grantor, will be regarded as having been made with the design on his part to make a gift to the grantee of the difference between the price paid and the actual value of the property. The valuable consideration recited in the deed by Scott to his wife being merely nominal, the conveyance in this court must be deemed voluntary. The fact is that Scott gave the land to his wife. The validity of the transaction is therefore governed by the law relating to voluntary conveyances. The contention of the appellant is, in effect, that a voluntary conveyance made by the husband to his wife is, under all circumstances, void as against existing creditors of the husband; that such deed is fraudulent as matter of law. It cannot be denied that formerly this view was sustained both in England and in this country by distinguished authority. Townsend v. Windham, 2 Vesey, 10; Reade v. Livingston, 3 Johns. Ch. 481, 8 Am. Dec. 520. But this harsh and inflexible doctrine did not long prevail in the jurisdiction of either of the courts just cited. Lush v. Wilkinson, 5 Ves. 384; Seward v. Jackson, 8 Cow. (N. Y.) 406; Cole v. Tyler, 65 N. Y. 78. The former doctrine still prevails in some of the states, but according to the weight of authority in this country a voluntary conveyance is not for that reason alone to be conclusively deemed fraudulent and void as against existing creditors of the

grantor. Hinde v. Longworth, 11 Wheat. 200, 6 L. Ed. 454; Lloyd v. Fulton, 91 U. S. 479, 23 L. Ed. 363; Jenkins v. Clement, 14 Am. Dec. 698; and Mr. Freeman's note on page 705; 14 A. & E. Enc. of Law, pp. 305, 306, note 1 on page 306, and cases cited. In the absence of decisions to the contrary in the state of Florida, the cases we have cited from the Supreme Court would, of course, be controlling here. We do not find that the courts of Florida are not in harmony with the prevailing doctrine. In McKeown v. Allen, 37 Fla. 491, 20 South. 556, relied on by the appellant, it is true it was held that a voluntary conveyance by a husband to his wife is presumptively fraudulent when attacked by existing creditors of the husband, and a decree was rendered for the complainant, but in that case, as said by the court, the defendants offered "no reason why the deed should be upheld, and made no defense except that the consideration named therein was a valuable one, and therefore it was not a voluntary conveyance." Referring to the conflict in the cases, the court said: "The greater weight of authority supports the proposition that such conveyances are not absolutely fraudulent per se, but that they only afford a prima facie or presumptive evidence of fraud which may be rebutted or explained." In Hinde v. Longworth, 11 Wheat. 200, 214, 6 L. Ed. 454, the court held that a deed from a parent to a child for the consideration of love and affection is not void as against creditors. "This want of a valuable consideration," said the court, "may be a badge of fraud, but it is only presumptive, and not conclusive, evidence of it, and may be met and rebutted by evidence on the other side." See 2 Rose's Notes on U. S. Rep. 470. In Lloyd v. Fulton, 91 U. S. 479, 23 L. Ed. 363—a case more like the one at bar—the same conclusion is reached. There it is said that fraud is always a question of fact with reference to the intention of the grantor, and that "prior indebtedness is only presumptive, and not conclusive, proof of fraud, and this presumption may be explained or rebutted." There is certainly nothing wrong in a solvent husband making provision for his wife. At most, a deed that he makes for that purpose could only be presumptively fraudulent. Each case must stand on its own facts, to which the law must be applied. The husband "must be just before he is generous," but surely, when the facts allow it, he is permitted to be both just and generous. If he must be absolutely free from debt before he can make a valid gift, the conditions of modern life are such that but few valid gifts could be made. If the only debt the grantor owes at the time of the gift is fully secured, the conveyance must be held valid, for he is then in the same condition legally as if he were free from debt. The evidence shows that at the time Scott made the deed to his wife the debt to the bank was well secured. It appears that the bank rested satisfied with the security for more than eight years. It is not even now shown affirmatively that the property in the hands of the trustees is not sufficient to secure the debt.

The decree of the Circuit Court is affirmed.