McCARTNEY v. TITSWORTH et al.

(Supreme.Court, Appellate Division, Fourth Department.   January 11, 1911.)

1. LIFE ESTATES (§ 13*)—RIGHTS OF LIFE TENANT—COMMISSION OF WASTE.
     The sale of timber from land by a life tenant constitutes waste.
     [Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 21, 32;
     Dec. Dig. § 13.*]

2. FRAUDS, STATUTE OF (§ 4*)—CONTRACTS ENFORCEABLE—ORAL CONTRACT—
   ANTENUPTIAL AGREEMENT.
     Under the statute of frauds (2 Rev. St. [2d Ed.] pt. 2, c. 7, tit. 2, §§
     2, 8), an oral antenuptial agreement is void.
     [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 4;
     Dec. Dig. § 4.*]

3. SPECIFIC PERFORMANCE (§ 43*)—CONTRACTS ENFORCEABLE—PART PERFORM-
   ANCE—ORAL AGREEMENT.
     An oral antenuptial agreement by the husband in consideration of the
     marriage to convey property to his wife, which was void under the stat-
     ute of frauds, could not be specifically enforced by the wife after mar-
     riage on the ground that she had performed her part of the agreement.
     [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §
     125; Dec. Dig. § 43.*]

4. FRAUDULENT CONVEYANCES (§ 58*)—VALIDITY—INSOLVENCY OF GRANTOR.
     If the grantor was solvent and retained sufficient property to pay his
     debts after making conveyances claimed to have been in fraud of credit-
     ors, the creditors cannot complain thereof.
     [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig.
     §§ 144–147; Dec. Dig. § 58.*]

5. FRAUDULENT CONVEYANCES (§ 215*)—VALIDITY—PURPOSE—DEFRAUDING
   CREDITORS.
     If the grantor's purpose in conveying land, which was known to the
     grantee, was to hinder, delay, and defraud persons having a claim
     against him for injury to property, such conveyance was void.
     [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig.
     §§ 641, 642; Dec. Dig. § 215.*]

6. FRAUDULENT CONVEYANCES (§ 297*)—ACTIONS—SUFFICIENCY OF EVIDENCE—
   GRANTOR'S SOLVENCY.
     In an action to set aside certain conveyances as in fraud of the gran-
     tor's creditors, evidence *held* to sustain a finding that the conveyances
     made the grantor insolvent.
     [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §
     891; Dec. Dig. § 297.*]

7. FRAUDULENT CONVEYANCES (§§ 298, 301*)—ACTIONS—SUFFICIENCY OF EVI-
   DENCE—KNOWLEDGE.
     In an action to set aside conveyances claimed to have been in fraud of
     the rights of persons having a claim against the grantor for injury to
     property, evidence held to show that both the grantor and the grantee
     knew of such claim when the conveyances were executed.
     [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig.
     §§ 892–895, 904–907; Dec. Dig. §§ 298, 301.*]

Appeal from Special Term, Livingston County.

Action by Sheldon McCartney against Etta Titsworth and others.
From a judgment for plaintiff, defendants appeal.   Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Charles D. Newton and Edwin A. Nash, for appellants.
Milton E. Gibbs and Fletcher C. Peck, for respondent.

WILLIAMS, J. The judgment should be affirmed, with costs.

The action was brought to set aside two conveyances of real property by Josiah E. Titsworth to his wife, the defendant Etta Titsworth, as fraudulent and void as to the creditors of the grantor, and to subject the property conveyed to the lien of a judgment against the grantor in favor of the plaintiff and the defendants other than the grantee. The grantor's first wife was Eleanor M. Titsworth. They had two daughters, Fanny McCartney and Mary E. Gilman. Both of them died before their mother. Mrs. McCartney left one child, the plaintiff Sheldon; and Mrs. Gilman left six children, Josiah A., Harry C., Mary E. Gilman Cole, Lucy Gilman Adams, Sophia E. Gilman Barnhart, and Fanny J. Gilman Whiteman. These were the only grandchildren of the grantor and his first wife. She died August 3, 1901, leaving a will whereby she gave the life use of all her property to her husband, and, at his death, one half to the child of Mrs. McCartney and the other half to the children of Mrs. Gilman. The will was probated, and the husband took possession of the property. A part of it was a farm of about 360 acres in Allegany county. While in possession as life tenant, the husband, by two contracts made in December, 1902, sold the timber from the farm for $2,000, and received the money therefor, and the timber was removed under the contract. This constituted waste of the grandchildren's property. An action for such waste was commenced May 10, 1905, and June 19, 1906 a judgment was rendered in favor of the grandchildren against the life tenant for treble damages, $9,000, and costs, amounting in all to $9,160.90, and forfeiting and terminating the life estate, and directing the premises to be forthwith surrendered to the grandchildren. Prior to the commencement of the action for waste, but after the waste had been committed, and February 4, 1905, the grantor married his second wife, the defendant Etta Titsworth. He was then 82 years old and she was 47 years old. They lived together until he died, April 28, 1907, intestate. April 15, 1905, he conveyed to her the house and lot where they lived, worth $2,000, and April 25, 1905, he conveyed to her the warehouse property (so called), worth $5,000. These are the two conveyances sought to be set aside in this action. It was claimed that he was insolvent when he made these conveyances, that both he and his second wife were aware at the time of the claim for waste made by the grandchildren, and that these conveyances were made for the purpose of preventing the collection of this claim. There was no consideration for the conveyances except an oral antenuptial agreement that he would convey the property to her if she would marry him, and the conveyances were made pursuant to such agreement. Executions were issued upon the waste judgment to Allegany and Livingston counties and returned unsatisfied, except $457.24 collected from his other property in September and November, 1906, some time before his death. This action was commenced in April, 1908, about a year after his death. The appellant, the second wife, makes two points here: (1) That the antenuptial contract was

a good consideration for the conveyances; and (2) that the action could not be maintained because there was no proof of insolvency at the time the conveyances were made.

. First. There was evidence by three witnesses that the oral antenuptial agreement was made just before the marriage and the court found the fact according to their evidence. The oral agreement when made was null and void under the statute of frauds. 2 Rev. St. (2d Ed.) pt. 2, c. 7, tit. 2, §§ 2, 8. After the marriage had taken place, the wife could not have enforced the specific performance of the agreement on the ground that she had performed her part of the agreement. Hunt v. Hunt, 171 N. Y. 396, 64 N. E. 159, 59 L. R. A. 306, and cases therein cited. It may be that the conveyances, when made, were valid as against the grantor, and as against creditors, in the absence of fraud. Lloyd v. Fulton, 91 U. S. 479, 23 L. Ed. 363. But in this case no claim is made in favor of the grantor. The attack is made by creditors, the grandchildren. Their debt existed at the time the conveyances were made, at the time of the marriage, and at the time the oral antenuptial agreement was made. The debt ripened into a judgment before this action was commenced. The court has found fraud upon the part of the grantor and knowledge of the fraud on the part of the grantee. The important question is whether the evidence supports these findings. The criticism of appellant is mainly directed to the claim that there was no proof of insolvency of the grantor, and without such proof fraud could not be established.

Second. I think it must be conceded that insolvency was necessary to establish fraud in this case. If at all times down to the making of the conveyances the grantor was solvent, and after they were given he retained still sufficient property to pay his debts, then these creditors had and have no reason to complain. I think, however, there is abundant evidence to establish the fact of insolvency, even back to the time the antenuptial agreement was made. The executions were returned substantially unsatisfied in December, 1906, one year and a half after the conveyances were given, and two years or so after the antenuptial agreement was made and the marriage took place. This was strong evidence of the grantor's insolvency at that time. It did not necessarily show insolvency two years and a half or three years before. The grantee, however, was well acquainted with his business and his property during this two or three years. She handled all the money, and received all the income, and paid all the bills and debts. She was examined in supplemental proceedings in December, 1906, about the time of the return of the executions, and again on the trial of this action in October, 1909, two years or more after his death. It was conceded on the trial that the grantor had no property except in Livingston and Allegany counties, to which the executions were issued. The grantee testified in great detail about the grantor's property and the money received and how it was disposed of. Among other things, she said he was awfully in debt when they were married, and that he seemed to owe every one, that there was one judgment against him, and she paid up things as fast as she could. The effort was to discover any property he had and what had been done with it since the marriage. That she knew all about these matters can hardly

be doubted, and all the information obtainable from her was drawn out by examining counsel. I do not see how it can be claimed, in view of her evidence, that the grantor at the time of his marriage or at the time of the giving of the conveyances had sufficient property to pay his debts, including the claim for waste made by the grandchildren. He appears, in fact, to have had little property left after conveying the property to his wife. He was so pressed for money that he drew moneys belonging to the grandchildren from the bank, and used it for the purposes of his litigations with them. Based upon her evidence in supplemental proceedings, this action was prosecuted, and the evidence was read on the trial. She was sworn also on the trial, and made no denial of the evidence already given by her. She did not attempt to testify her husband had any other property than that she had disclosed on her former examination, or that he was at any time solvent after the marriage, regarding the grandchildren's claim as a debt owing by him. So that the transfers of the property to the wife were evidently made with the knowledge by both parties of the grandchildren's claim, and that substantially all his property was thus disposed of and little left with which to pay such claim and debt. He could not be compelled by her to convey the property and his doing so was therefore voluntary; and if the intent of the grantor, to the knowledge of the grantee, was to hinder, delay, and defraud the grandchildren, then the conveyances were void. The court found that by the conveyances substantially all the grantor's property was transferred to the wife and he thereby became insolvent; that both of them knew of the grandchildren's debt, and therefore the conveyances were void. These findings I think were abundantly sustained by the evidence.

Upon the whole case I conclude the judgment was legal and just, and should be sustained. All concur.

Judgment and order affirmed, with costs.